UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CROWN CASTLE NG EAST LLC,

                                    Plaintiff,

                                                            **REPORT AND**
                                                            **RECOMMENATION**
                    -against-                               17-CV-3445 (SJF) (ARL)

THE TOWN OF OYSTER BAY, et al.,

                                    Defendants.
-----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

        Plaintiff, Crown Castle NG East LLC ("Crown Castle" or "Plaintiff"), commenced this

action against the Town of Oyster Bay (the "Town"), Town of Oyster Bay Town Board ("Town

Board"), Richard Lenz, and John Bishop, (collectively, "Defendants"), alleging violations under

(1) Sections 253 and 332 of the Federal Communications Act of 1934, as amended by the

Telecommunications Act of 1996 ("Telecommunications Act"); (ii) Section 27 of the New York

State Transportation Corporation Law ("N.Y. Trans. Corp. Law"); (iii) 42 U.S.C. § 1983; (iv)

New York Civil Practice Law and Rules ("CPLR") Article 78; and (v) state law.  Before the

Court, on referral from District Judge Feuerstein, are (1) Plaintiff's motion for summary

judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56; (2) Defendants' motion for

summary judgment pursuant to Rule 56; and (3) Plaintiff's motion to strike the declaration and

expert report of rebuttal expert Roger Mascettis.   In opposition to Plaintiff's motion for

summary judgment, and in further support of their own motion for summary judgment,

Defendants have challenged the Court's subject matter jurisdiction with respect to Plaintiff's

Telecommunication Act claims and Article 78 claim.  For the reasons that follow, the

undersigned respectfully recommends that Plaintiff's claims pursuant to the Telecommunications

Act be dismissed for a lack of jurisdiction, Plaintiff's motion for summary judgment with respect to the remaining claims be denied, Defendants' motion for summary judgment with respect to the remaining claims be granted and Plaintiff's motion to strike be denied as moot.

## BACKGROUND

### A.    Procedural History

Plaintiff originally filed the complaint in this action on June 8, 2017. An Amended Complaint was filed on August 21, 2017. Defendants answered the complaint and asserted counterclaims on July 31, 2017.

Plaintiff moves for summary judgment with respect to all twelve claims it asserted in the Amended Complaint. While Plaintiff has not directly addressed Defendants' counterclaims in its summary judgment motion, it summarily asks that Defendants' counterclaims be dismissed. Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem.") at 2. As part of Plaintiff's opposition to Defendants' motion for summary judgment, Plaintiff has also cross-moved to strike the declaration and rebuttal report of Roger Mascetti.

Defendants cross move for summary judgment dismissing Plaintiff's claims and granting each of Defendants' counterclaims. By Order dated March 13, 2019, Judge Feuerstein referred the motions to the undersigned.

### B.    Factual Background

The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.

#### 1.  The Parties

Plaintiff Crown Castle is a Delaware limited liability company. Def. Rule 56. 1 Stmt. ¶ 27. Between 2009 to 2016 Crown Castle installed over 100 Distributed Antenna System

("DAS") nodes in the Town of Oyster Bay.  *Id.* at ¶ 1.  Plaintiff's DAS nodes in the Town include antennas and related equipment.  *Id.* at ¶ 3.

Defendant Town is a municipal corporation of the State of New York.  Am. Compl. ¶ 13. Defendant Town Board of the Town of Oyster Bay is the municipal agency for the Town.  *Id*. at ¶ 14.  Defendants Richard Lenz and John Bishop are municipal employees of the Town.  *Id*. at ¶ 16.

### 2.  Town Code Provisions at Issue

This case hinges upon whether Plaintiff was required to obtain both a special use and building permit before installing wireless communication facilities in the Town right of way. Plaintiff takes the position that those permits were never required, and if they were, the Town is now estopped from enforcing compliance with those provisions of the Town Code.  Moreover, Plaintiff argues that the Town's action in removing two utility pole towers installed in 2017 and in issuing a cease and desist order regarding the remaining towers was, *inter alia*, a violation of the Telecommunications Act.  Defendants, on the other hand, take the position that special use and building permits were always required prior to the installation of utility poles and DAS nodes and in as much as Plaintiff never applied for those permits this Court lacks subject matter jurisdiction to hear this action. Alternatively, the Defendants argue that in the event this Court determines it has jurisdiction they are entitled to summary judgment.

At issue are several separate permit requirements and the interrelation between them. First, Section 93-15 of the Town Code provides:

> It shall be unlawful to excavate or construct, alter, remove, or demolish or to commence the construction, alteration or removal or demolition of a building or structure . . . without first obtaining a building permit therefor from the Division of Building of the Department of Planning and Development.

Declaration of Joseph Macy, dated February 22, 2019 ("Macy Decl.") ¶ 2, Ex. N.  A structure is

defined as "anything constructed or erected which requires location on the ground or attachment to something on the ground."  Def. Rule 56.1 Stmt. ¶ 12.  Defendants argue that this provision clearly requires the issuance of a building permit prior to the construction of any structure within the Town (the "Building Permit").  *Id*. at ¶ 11.  Plaintiff disputes the Town's position, arguing that building permits are not required for utility infrastructure erected in the Town's right of way. In support of this position, Plaintiff points out that between 2009 and May 9, 2017, they were allowed to install telecommunications equipment and new utility poles in the Town's right of way without a building permit.  Pl. Obj. Rule 56.1 Stmt. at ¶ 9.  Plaintiff asserts that in 2009 they were instructed in a letter from the Deputy Town Attorney to contact the Highway Department concerning their proposed installation.  Pl. Rule 56.1 Stmt. ¶ 2.  This letter dated December 29, 2008, rejected Plaintiff's proposal to enter a licensing agreement with the Town for the placement of Plaintiff's equipment on utility and Town poles and simply directed Plaintiff to contact the Highway Department to discuss necessary permits for placement of its equipment. Declaration of Robert D. Gaudioso In Support of Plaintiff's Motion For Summary Judgment, dated January 25, 2019 ("Gaudioso 1st Decl."), Ex. 1.  In a follow up letter to the Deputy Town Attorney dated January 20, 2009, Plaintiff reported that they had secured a permit for one pole and requested confirmation that no permits were required to attach their DAS nodes to existing utility poles.  *Id*. at Ex. 2.  In a response dated January 22, 2009, the Deputy Town Attorney confirmed that permits were not needed to attach DAS nodes to existing poles owned by the various utilities.  Id. at Ex. 3.  Plaintiff also cites the deposition testimony of several Town employees indicating their belief that the Town did not require a building permit before installation of a utility pole in the State, County or Town right of way.  *See, e.g*., Pl. Obj. Rule 56.1 Stmt.  ¶ 11 (citing testimony of Commissioner Maccarone, Gaudioso Opp. Decl. ¶ 20, Ex.

10 Dep. of Maccarone dated Apr. 3, 2018, 64:16-65:3 and the testimony of defendant Richard Lenz, Gaudioso Decl. ¶ 42, Ex. 32 Dep. of R. Lenz Apr. 10, 2018, 24:25-25:8.).  Nevertheless, the Town argues that the installations were all done in clear contravention of various sections of Town law including Section 93-15 of the Town Code which applies to the construction of any structure in the Town including a Town right of way. Def Obj. Rule 56.1 Stmt. ¶¶ 104-120. Beyond Section 93-15, the Defendants highlight other provisions of the Town Code setting forth permit requirements.   Chapter 246 of the Town Code sets forth District Regulations, including Individual Standards and Requirements for Certain Uses in Section 246-5.5.  Declaration of Todd C. Steckler in Support of Defendants' Motion for Summary Judgment, dated Jan. 25, 2019 ("Steckler Decl") at Ex. F.  Section 246-5-5.54 provides that "[a]ll external antennas more than 10 feet in height or two feet in diameter shall require a building permit from the Department of Planning and Development."  *Id*.  Additionally, Section 246-5-5.9 of the Town Code required a special use permit for any communication or cellular telephone towers.  Def. Rule 56.1 Stmt.  ¶ 21.

Section 246-5-5.9 provides

> Wherever possible, communication and cellular telephone facilities shall be located on Town-owned lands. In such instances, only Town Board approval of the lease for such purposes shall be required, irrespective of the zoning district in which the property is located.
>
> * * *
>
> Zoning Board of Appeals approval. In those districts where communication and cellular telephone towers are permitted subject to the issuance of a special permit by the Zoning Board of Appeals, the applicant shall include as a part of the special permit application a complete sign plan that includes all of the applicable information as identified in § 246-6.3 of this chapter.

Macy Decl. Ex. P.  The Town Code Schedule of Use Regulations for Special Use Permits requires a special use permit for antennas.  Def. Rule 56.1 Stmt.  ¶ 20.  The Town Code Schedule

of Use Regulations for Special Use Permits requires a Special Use Permit for wireless

telecommunication facilities.  Steckler Decl. Ex. H.  Thus, according to the schedule, wireless

telecommunication facilities and antennas require special use permits from the Zoning Board of

Appeals (the "Special Use Permit").[1]  Macy Decl., ¶ 2, Ex. R.   Plaintiff admits it never obtained

a special use permit for any of its DAS facilities in the Town.  Def. Rule 56.1 Stmt. ¶ 23.

Section 246-9 of the Town Code sets forth the requirements for obtaining a special use

permit.  Def. Rule 56.1 Stmt.  ¶ 19.  According to Section 246.9.9.1

> Formal application for a special use permit shall be made to the Office of the
> Town Attorney - Legislative Affairs, if Town Board approval is required, and to
> the Zoning Board of Appeals, if their approval is required, who shall be
> responsible for forwarding such application to the appropriate Town
> department(s). Each department shall review the application and forward it with a
> recommendation to the approving agency.

Macy Decl., ¶ 2, Ex. D.

Additionally, Defendants contend that Section 229-1 of the Town Code requires the consent

of the Town Board prior to entering upon any land owned by the Town for the purpose of occupying

the property or erecting a structure thereon.  Def. Rule 56.1 Stmt. ¶ 24.  Plaintiff disputes this

position, claiming that pursuant to the Telecommunications Act, Section 229-1 is "preempted except

that it may manage the right of way."  Pl. Opp. ¶ 24.  Section 229-1 provides that "no person shall

enter or go upon any land owned by the town for the purpose of occupying the property or erecting

any structure thereon . . . without having first obtained the consent of the Town Board and without

complying in all respects with the conditions, if  any, upon which such consent shall be granted."

Steckler Decl. Ex I.

---

[1] On September 12, 2017, the Town Board passed resolutions 593-2017 and 594-2017, which became the Town's
new "Wireless Telecommunications Facilities" legislation and changed the way the Town could issue permits for
the installation of wireless facilities.  Gaudioso 1st Decl. ¶ 13 Ex. 6.  All of the DAS facilities installed by Plaintiff
which are the subject of this lawsuit were installed prior to the enactment of this legislation.  Declaration of
Elizabeth Leslie Maccarone, dated July 23, 2018 ("Maccarone Decl.") ¶ 3 n.1.

Finally, prior to May 2017, if a wireless telecommunications services company sought to install facilities, such as a pole and equipment in the Town's right of way, the company was required to apply for a "Permit for Work on Town Right of Way" from the Town Highway Department (hereinafter "Road Opening Permit").[2]  Pl. Rule 56.1 Stmt. ¶ 15.  The permit application contained five options for an applicant to check in order to specify the nature of the request.  Steckler Decl. Ex. J.  Each of Plaintiff's permit applications submitted to the Highway Department specify they are for a "road opening" and make no reference to construction although construction options were among the choices. Steckler Decl. Ex. K.  Plaintiff asserts that it complied with this provision of the Code and received 22 Road Opening Permits from the Highway Department. Pl. Rule 56.1 Stmt. ¶ 47.

### 3.  Permit Applications

Between 2009 and 2016, Plaintiff installed over 100 DAS nodes in the Town.  Def. Rule 56.1 Stmt. ¶ 1.  Plaintiff's DAS nodes in the Town include antennas and related equipment.  *Id*. at ¶ 3.  As noted, Plaintiff never obtained a Building Permit from the Town for the construction of any of its DAS facilities, nor has Plaintiff ever obtained a Special Use Permit for any of its DAS facilities.  *Id*. at ¶¶ 18, 23.  The parties disagreement over whether the Town code provisions requiring Building and Special Use Permits should apply to the Plaintiff is at the heart of this case.

The parties do not disagree that prior to May 2017, if a wireless telecommunications services company sought to install facilities, such as a pole and equipment in the Town's right of way, it would require a permit from the Highway Department to access the right of way.  Pl.

---

[2] These Permits are defined herein as Road Opening Permits for ease of discussion.  Plaintiff, in its papers refers to these permits as "Permits to work on the Town right of way."

Rule 56.1 Stmt. at ¶ 15.  On August 24, 2016, when Plaintiffs sought to expand its existing DAS network adding new utility poles with DAS nodes within the Town's right of way they submitted 22 new applications to the Highway Department for Road Opening Permits.  Pl. Rule 56.1 Stmt. at ¶ 12, 16 ; Def. Rule 56.1 Stmt. at ¶ 4.  On November 15, 2016, Plaintiff submitted two more permit applications.  *Id.* at ¶ 5.  While the parties disagree on whether the 24 applications reference the DAS nodes, telecommunications equipment or poles to be installed by Plaintiff, they do agree that all of the permit applications indicated that the permits sought were for a road opening.  Def. Rule 56.1 Stmt. at ¶ 6

Between August 2016 and April 5, 2017, the Town and Plaintiff engaged in a series of negotiations regarding the 24 permit applications, including discussions regarding insurance, pole height and pole placement.  *See, e.g.,* Pl. Rule 56.1 Stmt. ¶¶ 21-24; 28-30; 32-24; 37-38.  On April 5, 2017, the Highway Department issued 22  Road Opening Permits to Crown Castle.  Def. Rule. 56.1 Stmt. at ¶ 8.[3]   Immediately upon receipt of the permits in April 2017,  Plaintiff began installing their poles and equipment in the 22 locations.  *Id.* at ¶ 48.

On May 10, 2017, the Town sent a letter to Plaintiff stating "[y]ou are hereby requested to cease and desist from any further work in connection with the installation of cell repeaters and poles with respect to any Town of Oyster Bay right of way permits."  *Id.* at ¶ 64; *see also* Steckler Decl. Ex. N.  While the cease and desist letter revoking Plaintiff's Road Opening Permits did not provide a reason for the revocation, a subsequent letter dated June 30, 2017 from Defendants' counsel to Plaintiff states that the revocation was based on the failure to apply for building permits as required by the Town code.  This letter further advised Plaintiff of the

---

[3] On January 31, 2017, in the midst of these negotiations, a new Town Supervisor took office and on February 19, 2017, a new Commissioner of the Department of Public Works and Commissioner of the Highway Department were also appointed.  Pl. Rule 56.1 Stmt. ¶¶ 41, 42.

Town's interest in discussing steps to legalize prior and future installations consistent with Town code requirements.  Steckler Decl. Ex. R.

At public hearings on the issue of cell tower placement conducted between May and June 2017, Town residents voiced their concerns over the installation of cell towers throughout the Town, and Town officials at those meeting expressed support for this opposition.  *See, e.g.,* Gaudioso 1st Decl. ¶ 54 Ex. 43; ¶¶ 54 Ex. 45; ¶ 57 Ex. 46.  Plaintiff asserts that as of May 9, 2017 the Town effectively issued a ban on all wireless facilities.  *See, e.g*., Pl. Mem. 4-13; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion to Strike the Declaration and Rebuttal Report of Roger Mascetti ("Pl. Opp. Mem.") 7-10; Pl. Obj. to Rule 56.1 Stmt. ¶¶ 9, 11, 22, 24, 25.  In support of this assertion, Plaintiff points to hearings of the Town Board at which residents voiced their concerns and Town Supervisor Saladino assured the residents he would do everything in his power to stop the spread of the cell towers in residential areas.  *See, e.g.,* Gaudioso 1st Decl. ¶ 54 Ex. 43; ¶¶ 54 Ex. 45; ¶ 57 Ex. 46.  Notwithstanding Plaintiff's characterization, the record reflects that the only official action taken by the Town Board relating to the provision of wireless service occurred on May 23, 2017 when the Town Board authorized the hiring of a law firm "for the purposes of determining the rights and authority of telecommunications carriers to install cellular, wireless, broadband and fiber optic equipment upon municipal right of way."  Gaudioso 1st Decl. ¶56 Ex. 45, p. 15.  Indeed, Defendants have offered testimony indicating that between May 1, 2017 and August 27, 2018 the Town received 21 applications for building permits and issued building permits for 13 wireless communications structures.  Declaration of Timothy Zike, dated August 27, 2018 ("Zike Decl.") ¶ 3.  This assertion is unrefuted by Plaintiff.

In its letter dated June 30, 2017, referred to above, the Town advised Plaintiff's counsel that the Town had removed two poles installed by Plaintiff in the Town's right of way. Steckler Decl., Ex. R. Plaintiff was informed that "this action was undertaken by the Town due to the fact that [Plaintiff] has no license or other agreement with the Town which would permit [Plaintiff] to utilize the public right of way for any purpose . . . [and Plaintiff] has never applied for nor has the Town ever issued the necessary building permits to allow the installation and construction of the poles at the sites." *Id.* Deputy Supervisor Gregory Carman stated that the Town removed Crown Castle's two poles and equipment after residents complained that the poles were in front of their homes and complained of health concerns. Pl. Rule 56.1 Stmt. ¶ 84. The photos that Crown Castle took when it picked up the poles and equipment show that the poles were chopped into pieces. *Id*. at ¶ 86.

According to Plaintiff, by May 10, 2017, the Town had illegally revoked the Road Opening Permits and removed two of Plaintiff's lawfully installed facilities and seized that property, permanently damaging it such that it could not be salvaged. *See id.* at ¶¶ 64, 72-74, 76-78; 80-87; Declaration of John Cavaliere, dated July 20, 2018 ("Cavaliere 1st Decl.") ¶¶ 38-39.

### C.    The Parties' Contentions

Plaintiff's first amended complaint asserts twelve causes of action. Four claims are brought pursuant to 47 U.S.C. § 332, one claim pursuant to 47 U.S.C. § 253, one claim for violation of N.Y. Trans. Corp. Law § 27, three claims under 42 U.S.C. § 1983, a claim under NY CPLR Art. 78 and state law claims for conversion and trespass to chattel.

Defendants, contend that pursuant to the clear and unequivocal language of the Town Code, in addition to a Road Opening Permit, Plaintiff was required to obtain a Building Permit and a Special Use Permit from the Town prior to the installation and construction of any DAS

facility in the Town's right of way, and that the failure to apply for or secure such permits is a complete bar to this action and also requires the granting of the Town's counterclaims. Defendants have asserted six counterclaims against Plaintiff, alleging that Plaintiff has violated various Town Code provisions cited above by failing to apply for or obtain the required permits prior to construction and installation of any DAS facility in Town. On each of these claims Defendants seek a declaration that Plaintiff cannot construct any wireless telecommunication structure without first obtaining a Building Permit and Special Use Permit from that Town. Defendants also seek a declaration that Plaintiff cannot rely on the "Permit for Work on the Town Right-of-Way" to construct any wireless telecommunication structure without first obtaining a Building Permit and Special Use permit from the Town. Finally, Defendants seek an order directing Plaintiff to remove all DAS facilities in the Town right of way and providing a monetary award to Defendants to compensate them for the unauthorized and illegal use of the Town right of way.

## DISCUSSION

## I.    Standards of Law

### A.    Jurisdiction

In response to Plaintiff's motion for summary judgment and in their reply brief in support of their motion for summary judgment, Defendants have argued that Plaintiff's claims under the Telecommunications Act and Article 78 should be dismissed for a lack of subject matter jurisdiction.[4] Memorandum Of Law In Opposition To Plaintiff's Motion For Summary

---

[4] In their opening brief in support of their motion for summary judgment, Defendants raised Plaintiff's failure to apply for the necessary permits prior to the installation of the 22 DAS nodes at issue, and the over 100 DAS nodes previously installed in the Town. Memorandum of Law in Support of Defendants' Motion For Summary Judgment, dated Jan. 25, 2018 ("Def. Mem.") 5-9. Defendants argued that Plaintiff's claims should be dismissed on this issue but did not specifically raise the issue of this Court's jurisdiction. *Id.*

Judgment ("Def. Opp. Mem.") at 5-9; Reply Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment ("Def. Reply Mem.") at 1, 9.  Defendants have not moved to dismiss Plaintiff's claims or moved for summary judgment on the basis of a lack of jurisdiction, but simply raise a challenge this Court's jurisdiction.  Typically, "the plaintiff's averment of jurisdictional facts will . . . be met in one of three ways: (1) by a Rule 12(b)[] motion, which assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency, (2) by a Rule 56 motion, which asserts that there are undisputed facts demonstrating the absence of jurisdiction, or (3) by a request for an adjudication of disputed jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the merits." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).  "If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought." *Id*.  "[I]f a genuine dispute of material fact exists, the Court may conduct a hearing limited to Article III standing . . . [o]r, where the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of the evidence." *Alliance*, 436 F.3d at 88.  Defendants have answered the Complaint and presently move for summary judgment.  Defendants challenge to Plaintiff's assertion of jurisdiction can best be considered as part of their motion for summary judgment.

This Court must consider Defendants' jurisdictional challenges before consideration of the merits of the parties' summary judgment motions.  *Craig x. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526 (SJF)(GRB), 2015 U.S. Dist. LEXIS 3819, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y.

2011)).  "A court ruling on a jurisdictional challenge must first determine whether the defendant is bringing a facial or factual challenge to its jurisdiction." *Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 U.S. Dist. LEXIS 85462, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) (citing *United States ex rel. Cosens v. Yale-New Haven Hosp*., 233 F. Supp. 2d 319, 320 (D. Conn. 2002)); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both.").  A facial challenge to the Court's jurisdiction requires the Court to accept all of a party's allegations as true.  *Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V., No.* 03 Civ. 10312, 2005 U.S. Dist. LEXIS 19788, 2005 WL 2207017, at *4 (S.D.N.Y. Sept. 8, 2005); *A.I.G. Asian Infrastructure Fund, L.P. v. Chase Manhattan Asia Ltd*., No. 02 Civ. 10034 (KMW), 2004 U.S. Dist. LEXIS 27334, at *4, 2004 WL 3095844 (S.D.N.Y. Mar. 25, 2004).

"When deciding a factual challenge to subject matter jurisdiction, 'the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts.'" *The Roman Catholic Archdiocese of New York v. Sebelius*, 907 F. Supp. 2d 310, 321 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Adler Levithan Assocs*., 932 F. Supp. 94, 95 (S.D.N.Y. 1996)); *see also In re Rhodia S.A. Sec. Litig*., 531 F. Supp. 2d 527, 537 (S.D.N.Y. 2007) ("the burden of proving jurisdiction is on the party asserting it . . . to make a prima facie showing of jurisdiction.").  The court's task on a factual challenge is to assess the adequacy of a plaintiff's showing of jurisdiction and "that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

"[I]t is a court's duty to resolve disputed jurisdictional facts."  *Gaston v. New York City Dep't of Health*, 432 F.Supp.2d 321, 326 (S.D.N.Y. 2006) (citing *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012,1019 (2nd Cir.1993)).  "[W]here jurisdictional facts are placed in

dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)).  "In resolving such disputes, a district court may 'if necessary, hold an evidentiary hearing.'"  *Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 303 (E.D.N.Y. 2008) (quoting *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2003)); *A.I.G. Asian Infrastructure Fund, L.P.,* 2004 U.S. Dist. LEXIS 27334, at *4 (factual attack "requires the Court to determine whether the plaintiff has established facts sufficient to support subject matter jurisdiction").

### B.     Summary Judgment

Both parties have moved for summary judgment.  "'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)).  In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc*., 150 F.3d 132, 137 (2d Cir. 1998).  If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable.  *See Holt v. KMI-Continental, Inc*., 95 F.3d 123, 129 (2d Cir. 1996), *cert denied*, 520 U.S. 1228 (1997).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *Gallo v. Prudential Residential Servs.,*

*L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994).  When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim."  *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex,* 477 U.S. at 322).  A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

## II.    Subject Matter Jurisdiction

### 1.    Plaintiff's Claims Pursuant to Section 332(c)(7)(B) of the Telecommunications Act

In opposition to Plaintiff's motion for summary judgment and in support of their own motion, Defendants argue that this Court lacks jurisdiction to hear Plaintiff's claims pursuant to Section 332(c)(7)(B) of the Telecommunication Act because Plaintiff's claims are not ripe.[5] According to Defendants, Plaintiff acknowledges it has never applied for a Building Permit (required by Town Code §§ 93-15 and 246-5.4), never sought the permission of the Town to construct its facilities in the right of way (Town Code § 229-1), and never applied for a Special Use permit for any of 24 DAS nodes now complained of by Crown Castle, nor the over 100 DAS facilities it has installed in the Town, as required by Sections 246-9 and 246-5.5-9 of the Town Code.  Therefore, Defendants contend, Plaintiff's claim is not ripe for adjudication because

---

[5] Counts I, II, III, and V are brought pursuant to Section 332(c)(7)(B) of the Telecommunications Act.

Plaintiff has never been denied a permit for the installation of its equipment.

In response, Plaintiff argues that the Town mischaracterizes Plaintiff's position, "improperly reframing it [as] a claim centered on the denial of building and special use permits." Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply Mem.") at 24. According to Plaintiff, "those permits were not required and do not apply in this case." *Id*. Rather, Plaintiff takes the position that all that was required was the Road Opening Permit. Plaintiff adds that no other utility is required to obtain approval to enter the right of way and that no other utility is required to obtain a building permit to install a utility pole on the Town right of way. Pl. Opp. Mem. at 2-3. Next, Plaintiff argues that its antenna and facilities are not of a size and shape which would have required a permit. *Id*. at 3. Plaintiff also argues that "there is nothing in the administrative record to support the Town's latest position" regarding its refusal to allow the installation of the 24 DAS nodes and therefore this is a "post-hoc rationalization" which must be rejected by the Court. *Id*. at 5. Finally, Plaintiff argues that Federal Communications Commission ("FCC") shot-clock rules, which require a municipality to rule on all applications within a specified time-period, confer jurisdiction on this Court because the Town did not rule on two of Plaintiff's 24 road opening applications within the specified time period. Pl. Reply Mem. at 27.

Plaintiff's base jurisdiction, in part, on Sections 332(c)(7)(B) of the Telecommunications Act. Am. Compl. ¶ 5. Section 332 (c)(7)(B)(v) provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." § 332(c)(7)(B)(v); *see also Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 492-93 (2d Cir. 1999). "Section

332(c)(7), which relates only to the zoning of 'personal wireless service facilities,' 47 U.S.C. § 332(c)(7)(A), embodies the balance Congress struck 'between two competing aims — to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers.'" *Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*, No. 12-CV-6157 CS, 2013 U.S. Dist. LEXIS 93699, 2013 WL 3357169, at *3 (S.D.N.Y. July 3, 2013), aff'd, 552 F. App'x 47 (2d Cir. 2014) (quoting *Omnipoint Commcn's, Inc. v. City of White Plains*, 430 F.3d 529, 531 (2d Cir. 2005)). Thus, Congress committed the siting of wireless facilities to the discretion of state and local governments, subject only to the limitations set forth in Section 332(c)(7)(B). *See* 47 U.S.C. § 332(c)(7)(A) ("[D]ecisions regarding the placement, construction, and modification of personal wireless service facilities" are left to the discretion of local or state governments or instrumentalities "[e]xcept as provided in [Section 332(c)(7)(B)]."); *Willoth*, 176 F.3d630, 637 (2d Cir. 1999) ("[T]he TCA preserves local zoning authority in all other respects over the siting of wireless facilities . . . .").

According to the Congressional Conference Committee, the Telecommunications Act was intended "to provide for a pro-competitive, de-regulatory national policy framework to accelerate rapidly private sector deployment of advanced telecommunications and information technologies." *See Cellular Telephone Co.*, 166 F.3d at 492-93 (quoting H.R. Conf. Rep. No. 104-458, at 206 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124). Nevertheless, "Congress and courts recognize local governments' legitimate interest in determining the placement of wireless facilities." *Sprint Spectrum L.P. v. Bd. of Zoning Appeals of Town of Brookhaven*, 244 F. Supp. 2d 108, 114 (E.D.N.Y. 2003). "Construed as favorably to federal jurisdiction as its text can be reasonably interpreted, the [Telecommunications] Act manifested only a limited scope of federal jurisdiction to review state and local zoning decisions. By limiting the federal courts'

jurisdiction, Congress manifestly limited federal intrusion into local zoning authority." *Nextel Commc'ns of the Mid-Atl., Inc. v. Town of Wayland*, 231 F. Supp. 2d 396, 410 (D. Mass. 2002).[6] If, here, it can be said that no final zoning decision was rendered because no application had been made, this Court lacks jurisdiction over Plaintiff's Telecommunication Act claims brought pursuant to Section 332 (c)(7)(B).

As a fact finder for purposes of this jurisdictional inquiry, the Court must determine if Plaintiff has carried its burden of demonstrating that the Building Permits and Special Use Permits were not required prior to the installation of its poles and DAS nodes.

First, Plaintiff's position that it was not required to obtain permits in the past does not provide a justification for its failure to apply for permits if they were required by the Town Code. If the permits were required, the fact that Plaintiff was permitted to violate the Town Code in the past does not provide an excuse for its current failure to apply for the necessary permits. Moreover, although the record reflects that Plaintiff was told by Town employees that permits were not required to attach DAS nodes to existing utility poles, nothing in the record indicates that Plaintiff was given similar guidance with respect to the installation of its own utility poles in the Town right of way.

The Second Circuit has held that "principles of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow." *LaTrieste Rest. & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994); *see also Parkview Assocs. v. City of New York*, 71 N.Y.2d 274, 282, 519 N.E.2d 1372, 525 N.Y.S.2d 176 (1988) (holding that "'[e]stoppel is not available against a local government unit for the purpose of

---

[6] Although not raised in the context of a jurisdictional challange, "[a] number of courts, including several courts in this Circuit, have ruled that when the wireless service provider's application has not been denied, a claim under § 332(c)(7)(B)(iii) does not lie." *Up State Tower Co., LLC v. Town of Kiantone, New York*, No. 1:16-cv-00069-MAT, 2016 U.S. Dist. LEXIS 170827 at *17, 2016 WL 7178321 (W.D.N.Y. Dec. 9, 2016) (citing cases).

ratifying an administrative error,'" and such an administrative error does not confer rights contrary to the zoning laws) (quoting *Morley v. Arricale*, 66 N.Y.2d 665, 667, 486 N.E.2d 824, 495 N.Y.S.2d 966 (1985)).

The erroneous assurances given by the Deputy Town Attorney and Highway Deapartment employees with respect to Town permit requirements for attaching DAS nodes to existing utility poles does not bind the Town.   "[I]t is settled under New York law that a town official . . . cannot by his or her lone statement bind the municipality as a whole." *Citizens Accord, Inc. v. Town of Rochester*, No. 98-cv- 715, 2000 U.S. Dist. LEXIS 4844, at *42, 2000 WL 504132 (N.D.N.Y. 2000) (citing *Zimmer v. Town of Brookhaven*, 247 A.D.2d 209, 214, 678 N.Y.S.2d 377 (2d Dept. 1997); *see also Matter of Bensman v. Weiner*, 32 A.D.3d 1181, 821 N.Y.S.2d 341 (4th Dep't 2006) ("Even if the advice of the employee was erroneous, [the agency] is not estopped by it"); *Matter of Smith v New York State & Local Retirement Sys.*, 199 A.D.2d 763, 764, 605 NYS2d 429 (3rd Dept. 1993) ("it is well established that erroneous advice given by an employee of a governmental agency" does not estop the agency from exercising its functions). "[E]stoppel may not be invoked against a municipal agency to prevent it from discharging its statutory duties . . . [nor] for the purpose of ratifying an administrative error ['even where there are harsh results']. " *Matter of Parkview Assoc. v. City of New York*, 71 N.Y.2d 274, 282, 525 N.Y.S.2d 176 (1988); *see also Universal Outdoor, Inc. v. City of New Rochelle, New York*, 286 F. Supp. 2d 268, 277 (S.D.N.Y. 2003). ("The fact that neighbors' complaints led the City to discover its error does not override the settled rule that a municipality cannot be estopped by its mistake from enforcing the law").  Here, Plaintiff does not take the position that the Town Code provisions were not on the books.  Rather, Plaintiff simply argues that no one ever pointed out that  Building Permits and Special Use Permits were required.  This is a classic example of

estoppel and as such, does not excuse Plaintiff from compliance with Town Code.

Second, with respect to Plaintiff's position that that no other utility is required to obtain a permit, Plaintiff provides no support for this conclusory statement. "[U]nsupported allegations and conclusions of law . . . do not suffice to defeat summary judgment" or in this case confer jurisdiction. *Tzougrakis v. Cyveillance, Inc.*, 145 F. Supp. 2d 325, 330 (S.D.N.Y. 2001); *Zeigler v. Marriott Int'l, Inc.,* No. 03 Civ. 7688, 2005 U.S. Dist. LEXIS 7647, 2005 WL 1022431, at *7 (S.D.N.Y. May 2, 2005) ("The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts").[7]

Third, Plaintiff disputes Defendants' position that its facilities are four foot cubic antenna, four cubic foot equipment boxes and a 35 foot pole, which would require Building Permits and Special Use Permits. Pl. Opp. Mem. at 3. In support of this position Plaintiff points to the declaration of Gregory Sharpe. Declaration of Gregory Sharpe In Support of Plaintiff's Motion for Summary Judgment, dated January 22, 2019 ("Sharpe Decl."). The declaration of Mr. Sharpe provides that "the three volumetrically independent antenna units and the antenna equipment occupy 4.6 cubic feet." *Id*. at ¶ 17. Plaintiff states that "[v]olumetrically independent means that these three sections are physically separate and occupy their own unique and non-overlapping space within the canister, [that] these three units are arranged like equal volume pie wedges when viewed from the top down [and] each of these units occupy less than 1.55 cubic feet of space within the exterior cover." *Id*. Thus, the parties disagree, creating an issue of fact with respect to the size and shape of Plaintiff's DAS nodes and whether or not they require a

---

[7] Defendants have offered testimony indicating that between May 1, 2017 and August 27, 2018 the Town has received 21 applications for building permits and has issued building permits for 13 wireless communications structures. Zike Decl. ¶ 3. This assertion is meaningless with respect to Plaintiff's contention that no other utility was required to obtain permits since the Town adopted the Wireless Telecommunications Facilities ordinance in September 2017 which changed the Town Code regulations governing all wireless facilities in the Town.

Special Use Permit as an antenna according to the Town Code. The declaration of Mr. Sharpe, however, does not address the height of the utility poles installed by Plaintiff. In their negotiations over the Road Opening Permits Plaintiff stated that the utility poles to be installed would be reduced from 50 feet to 35 feet. Pl. Rule 56.1 Stmt. ¶ 46. Thus, there is no dispute, that the antenna are placed on 35 foot utility poles, which, according to Defendants would clearly require a permit pursuant to Section 246-5.5.4-2. Def. Reply Mem. at 2. Additionally, Plaintiff does not address Section 246-5-5.9 of the Town Code which requires a Special Use Permit for any communication or cellular telephone towers. Def. Rule 56.1 Stmt. ¶ 21. Thus, the Town's Special Use Permit would be implicated, which requires a permit for all poles 35 feet tall or higher as well as all communication or cellular telephone towers. In short, Plaintiff is not excused from compliance with these provisions.

Fourth, this is not a "post-hoc rationalization" case as suggested by Plaintiff. In *New York SMSA Ltd. P'ship v. Town of Oyster Bay*, No. 11-CV-3077 MKB, 2013 U.S. Dist. LEXIS 116818, 2013 WL 4495183, at *18 (E.D.N.Y. Aug. 16, 2013) cited by Plaintiff, the plaintiff applied for and was denied special use permits. The Court there was bound by the reasons for the denial of the permit "articulated in the written opinion" and could not consider additional justification for the denial offered to the Court. *Id*. at *60 n. 4. Here, the basis of Defendants' jurisdictional argument is that there was no denial because no application was ever made. Thus, for purposes of evaluating this Court's jurisdiction, the Court must consider whether the Building Permits and Special Use permits were required prior to the installation of the DAS nodes and poles.

As evidence in support of its position regarding post hoc rationalization Plaintiff argues that there is evidence contradicting the declaration of Commissioner Maccarone which states that

a permit was required and not applied for.  In her declaration dated July 23, 2018, Commissioner

Maccarone states that "during the period in which Crown Castle installed its DAS facilities in the

Town, the Town Code was clear and unequivocal that such installation required both a building

permit and a special use permit."  Maccarone Decl. ¶ 3.  Commissioner Maccarone also states "I

have reviewed the records of the Town and can unequivocally state that Crown Castle did not

and has never obtained a building permit for any of the over 100 DAS facilities it has installed in

the Town, all in violation of Sections 93-15 and 246-5.5.4 of the Town Code."  *Id*. at ¶ 8.  In

addition, she states that Plaintiff was required to, and failed to, obtain a special use permit from

the Zoning Board of Appeals prior to the construction and installation of any DAS facility.  *Id*. at

10.  Plaintiff points out that at a public hearing in September 2017, Commissioner Maccarone

stated that

> As you know, the Planning and Development had not issued any – we were not charged with any issuing of any permits in the Town Highway right-of-ways.  Any existing cell towers on private property or antennas, they do come through Planning and Development under our Zoning Ordinance; however, in the right-of- ways, we have never been charged with administering that program.

> So under this new legislation that's being passed tonight, Planning and Development will be coordinating with the Highway Department, but we will be issuing the permits and overseeing the entire process.

Gaudioso 1st Decl. ¶ 9; Ex. 2 49:13-25.  This inconsistency does not go far enough to contradict

the witness' statement that a permit was required or to even to create an issue of fact. While

Commissioner Maccarone states that Planning and Development had not been charged with

administering the installation of towers in the Town right of way, she does not goes so far as to

state that no permits were required.  Plaintiff also points to the deposition testimony of Richard

Lenz, Commissioner of the Public Works Department of the Public Works and Highways

indicating that it was his "understanding" that prior to May 2017 all that was required to install a

new pole prior to May 2017 was a Road Opening Permit.  Pl. Opp. at 5.  As discussed above, an error committed by Town officials does not estop the Town from enforcing clear Town Code provisions.

Plaintiff's also argue that there is a shot clock violation (Count I).  However, for purposes of an evaluation of this Court's jurisdiction the relevant inquiry is whether the Building Permits and Special Use Permits were required.  Since the undisputed evidence is that Plaintiff never applied for the Building Permit or Special Use Permit the shot clock has not even begun to run.

Finally, Plaintiff devotes large portions of its motion papers supporting its position that the Town's motivation in revoking the permits was to quell public outcry regarding health concerns.  Absent impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person, the Town's motivation, however, is irrelevant for purposes of the Court's evaluation of its jurisdiction.  *See, e.g., Dubin v. Cty. of Nassau*, 277 F. Supp. 3d 366, 397 (E.D.N.Y. 2017) ("subjective motivation in enacting the ordinance is irrelevant"); *Beach Commc'ns*, 508 U.S. at 315 ("Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.").

It is Plaintiff's burden to demonstrate to the Court that jurisdiction exists.  *Roman Catholic Church,* 907 F.Supp. at 95.  Jurisdiction for the federal courts to hear a claim under Section 332 only arising upon the denial of an application for a permit.  In the instance case, Plaintiff applied for 22 Road Opening Permits but never applied for a Building Permit or a Special Use Permit.  The Court finds that Defendants have demonstrated that the Building Permit and/or Special Use Permits were required and not applied for and therefore there is not "any final

action or failure to Act" by the Town denying Plaintiff the opportunity to place its equipment in the Town right of way upon which jurisdiction can be based.

As recognized by the court in *UP State Tower Co., LLC v. Town of Kiantone*, No. 1:16-cv-00069-MAT, 2016 U.S. Dist. LEXIS 170827, 2016 WL 7178321, *6 (W.D.N.Y. 2016), absent an outright denial of the application the matter is not ripe for adjucation. *Id*. at * 19. "[T]he possibility remains that the Town may approve the Application. 'As the Supreme Court has recognized, local zoning authorities are flexible institutions that may give back with one hand what they have taken with the other.'" *Id.* (quoting *Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1004 (7th Cir. 2004)).

Accordingly, because it is Plaintiff's burden to demonstrate that jurisdiction exists, and Plaintiff has not presented evidence supporting a conclusion that a final decision has been issued by the Town with respect to Plaintiff's proposed installation, this Court respectfully recommends that the District Court dismiss Plaintiff's claims brought pursuant to Section 332(c)(7)(B) of the Telecommunications Act for lack of jurisdiction.

### 2.  Plaintiff's Claim Pursuant to Section 253(a) of the Telecommunications Act

Plaintiff also assert a claim under Section 253(a) of the Telecommunications Act. According to the Amended Complaint, Defendants' issuance of the Cease and Desist Order and revocation of the Road Opening Permits and their failure to act on two (2) of the Road Opening applications, obstruct, prevent and bar entry to the deployment of Crown Castle's telecommunications facilities in the Town's right of way.  Am. Compl. ¶ 148.  Plaintiff argues that this conduct is not directly related to the Town's management of the right of way, is not competitively neutral and nondiscriminatory, and is not related to the Town's imposition of fair, reasonable and lawful requirements, and is, therefore, not within the limited authority reserved to

the Town under 47 U.S.C. § 253(c).  *Id*. at ¶ 152.  Accordingly, Plaintiff claims the Town has prohibited the provision of telecommunication services by issuing a moratorium that materially inhibited the deployment of wireless infrastructure.  Pl. Mem. at 4.

Defendants' argument that this Court lacks jurisdiction over the Telecommunications Act claims is addressed to Plaintiff's failure to apply for the required permits, which relates primarily to Plaintiff's Section 332 claims.  A claim brought pursuant to Section 253, however, is not based on a decision regarding zoning, but rather on local regulation and is typically used to challenge a "franchising requirement or other potentially discriminatory licensing scheme." *Crown Castle NG E. Inc. v. Town of Greenburgh*, No. 12-CV-6157, 2013 U.S. Dist. LEXIS 93699, 2013 WL 3357169, at *12 (S.D.N.Y. July 3, 2013) (internal quotation marks omitted), aff'd, 552 F. App'x 47 (2d Cir. 2014) (summary order); *Cox Communications PCS, L.P. v. City of San Marcos,* 204 F. Supp. 2d 1272, 1277 (S.D. Cal. 2002) (distinguishing between Section 253, "which provides a cause of action against local regulations," and Section 332(c)(7), which "gives a cause of action against local decisions.").

*Cox Communications PCS, L.P. v. City of San Marcos,* 204 F. Supp. 2d 1272 is instructive here.   In that case, the court allowed a Section 253 claim to go forward at the pleading stage because plaintiff there facially challenged an ordinance requiring it to obtain a conditional use permit before using the public rights-of-way for wireless facilities, *see id*. at 1279-80, but dismissed a corresponding Section 332(c)(7) claim because plaintiff had not gone through the statutorily-ordained process and been aggrieved by it, *see id*. at 1275, 1277.  In *Cox*, the court held that "[t]o determine if a claim based on section 253 of the FTA is ripe, courts will first engage in a constitutional inquiry to consider whether a case or controversy exists, *see City of Auburn v. Qwest Communications Corp*., 260 F.3d 1160, 1170 (9th Cir. 2001), then will

consider (1) whether the issues are fit for judicial decision, and (2) whether the parties will suffer hardship if the court declines to resolve the issue." *Id*. at 1278, citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 148, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967).

The *Cox* Court concluded that a case or controversy existed because Sprint was unable to place its equipment throughout the city because of the enforcement of the allegedly unconstitutional ordinance, and Sprint presented evidence that it is losing goodwill and customers because of the delay created by the lengthy permit process. *Id*. at 1279. Next the court turned to whether the two-prong test laid out in *Abbot Labs*, 387 U.S. at 148 had been satisfied. The Cox Court held that if the controversy is a "purely legal one," it is fit for a judicial decision. *Id*.

Here, however, Plaintiff's claim pursuant to Section 253 of the Telecommunications Act is that that the Town has prohibited the provision of telecommunication services by issuing a moratorium that materially inhibited the deployment of wireless infrastructure. Pl. Mem. at 4. As evidence of the moratorium Plaintiff points to the Town's revocation of the Road Opening Permits, and the seizure by the Town of the two installed facilities. Pl. Mem. at 10. According to Plaintiff, these actions amount to a defacto moratorium that have effectively halted the acceptance, approval or processing of permits for telecommunications services. *Id*. Defendants argue that Plaintiff does not challenge any Town ordinances, but rather only challenges that actions by the Town. Def. Mem. at 14.

Section 253(a) specifies that "no State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). Courts have held that a prohibition does not need to be complete or "insurmountable" to run afoul of §

26

253(a). *See, e.g., TCG N.Y., Inc. v. City of White Plains,* 305 F.3d 67, 76 (2d Cir.), *cert. denied*, 538 U.S. 923, 155 L. Ed. 2d 314, 123 S. Ct. 1582 (2002); *RT Communs., Inc. v. FCC*, 201 F.3d 1264, 1268 (10th Cir. 2000). Additionally, the FCC has stated that, in determining whether an ordinance has the effect of prohibiting the provision of telecommunications services, it "considers whether the ordinance materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Cal. Payphone Ass'n*, 12 FCC Rcd 14191 (1997)." Section 253 provides a number of "safe harbor" exceptions for states and local governments to establish regulatory requirements. "Among the 'safe harbor' exceptions is a provision authorizing state and local governments to regulate telecommunication services on public property." *Global Network Commc'ns, Inc. v. City of New York*, 562 F.3d 145, 151 (2d Cir. 2009). "A regulation that falls within this safe harbor is protected even if it has the effect of prohibiting telecommunications service in contravention of § 253(a)." *Marotte v. City of New York*, 16-CV-8953 (GHW) (OTW), 2019 U.S. Dist. LEXIS 21049 at *27, 2019 WL 1533304 (S.D.N.Y. Feb. 9, 2019).

"A distinction must be made between those regulations that are intended to manage the public rights-of-way themselves, and are therefore permissible under 253(c), and those that extend beyond rights-of-way management into the purview of regulation of telecommunications services." *Tel Comm. Techs. v. City of New Haven*, No. 3:03CV1895 (DJS), 2006 U.S. Dist. LEXIS 60440, *14-15, 2006 WL 2349544 (D. Conn. Aug. 10, 2006); *see also TCG New York, Inc. v. City of White Plains*, 305 F.3d 67 (2d Cir. 2002). "[R]ight-of-way management means control over the right-of-way itself, not control over companies with facilities in the right-of-way." *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1177 (9th Cir. 2001) (citing *In re TCI Cablevision of Oakland County*, Inc., 12 F.C.C.R. 21396, 21441 (F.C.C. 1997)). Permissible

management of public rights-of-way includes "vital tasks necessary to preserve the physical integrity of streets and highways. . . [such as] coordination of construction schedules . . . establishment and enforcement of building codes, and keeping track of the various systems using the rights-of-way to prevent interference between them." *In re TCI Cablevision*, 12 F.C.C.R. at 21414.

The burden is on the plaintiff to prove that Section 253(a) acts as a prohibition of the regulation in question before determining whether the regulation is saved by Section 253(c). *See City of Auburn,* 260 F.3d at 1177; *Pacific Bell Tel. Co. v. Cal. Dep't of Transp.,* 365 F. Supp. 2d 1085, 1090 (N.D. Cal. 2005); *TC Sys., Inc., v. Town of Colonie,* 263 F. Supp. 2d 471, 484 (N.D.N.Y. 2003).[8] Here, as argued by Defendants, Plaintiff has failed to point to a regulation or Town Code provision that is violative of Section 253.  Plaintiff does not challenge any Town ordinance, but rather only challenges the actions by the Town in issuing its cease and desist letter (see Exhibit N) directing Crown Castle to cease construction and operation of 22 separate DAS facilities, failing to act on two applications for DAS facilities and removing two DAS facilities from the public right-of-way.  Def. Mem. at 14; Am. Compl. ¶ 148.  "Section 253 is a preemption statute that at its heart deals with laws themselves, not discretionary decisions made pursuant to those laws." *Crown Castle NG East Inc. v. Town of Greenburgh, N.Y.*, No. 12-cv-6157, 2013 U.S. Dist. LEXIS 93699, 2013 WL 3357169, at *1 (S.D.N.Y. July 3, 2013).  Absent the identification of a Town Code provision which Plaintiff claims to be pre-empted by Section 253, no violation can be found. *See, e.g., Crown Castle NG E. LLC v. City of Rye*, No. 17 CV

---

[8] Once the party seeking preemption has sustained its burden of showing that a local regulation has violated § 253(a), the burden of proving that the regulation is saved by § 253(c) is on the party claiming that the "safe harbor" applies, in this case, the Town. *See New Jersey Payphone Assoc. v. Town of West New York*, 130 F. Supp. 2d 631, 636 (D.N.J. 2001) (citation omitted). Section 253(c) reserves the authority of local governments to "manage the public rights-of-way," as well as their right to charge "fair and reasonable compensation," as long as it is done on a "competitively neutral and nondiscriminatory basis."  47 U.S.C. § 253(c).

3535, 2017 U.S. Dist. LEXIS 202528 at * 12, 2017 WL 6311693 (S.D.N.Y. Dec. 8, 2017) ("'Because there is no ordinance, regulation, or legal requirement at issue and the City's review falls within the kind of ROW approval contemplated as legal in TCG,  plaintiff fails to state a claim under Section 253(a) of the TCA.")

Plaintiff has attempted to justify its failure to apply for the Building Permits and Special Use Permits by arguing that the Town issued a moratorium on the deployment of additional telecommunications facilities.  To support its claim of a moratorium, Plaintiff points to public statements made by Town officials at public hearings.  However, Defendants have provided an affidavit indicating that between May 1, 2017 and August 27, 2018, the Town has received 21 applications for building permits and has issued building permits for 13 wireless communications structures, Zike Decl. ¶ 3, belying any claim of a moratorium.

Plaintiff has failed to demonstrate that a case or controversy exists because Plaintiff has failed to demonstrate that the Town is seeking to enforce an unconstitutional ordinance, let alone any ordinance.  Plaintiff has not demonstrated that the Town banned the deployment of wireless communication structures.  Therefore, no case or controversy exists and this Court lacks jurisdiction.  Accordingly, this Court respectfully recommends that the District Court grant Defendants' motion to the extent is seeks dismissal of Plaintiff's Section 253 claim for lack of jurisdiction.

## III.    Motions for Summary Judgment[9]

### A.    Section 1983 Due Process Claims

Plaintiff asserts three claims for violation of 42 U.S.C. § 1983.  First, Plaintiff claims that

---

[9] Because this Court recommends the District Court dismiss Plaintiff's Telecommunications Act claims (Counts I, II, III, IV & V) for a lack of subject matter jurisdiction, the Court has not considered the portions of Plaintiff's motion for summary judgment addressed to those claims.

"Defendants' arbitrary and capricious act of issuing the Cease and Desist Order and revoking Crown Castle's permits, violated the rights, privileges, and immunities of the Crown Castle as secured by the Fifth and Fourteenth Amendments [and] Crown Castle had a vested protectable property interest in the lawfully issued permits."  Am. Compl. ¶ 166 (Count VII).  Plaintiff also claims that "Defendants' arbitrary and capricious act of seizing Crown Castle's equipment from two (2) personal wireless service facilities, violated the rights, privileges, and immunities of the Crown Castle as secured by the Fifth and Fourteenth Amendments [and] Crown Castle had a vested protectable property interest in its equipment and a lawful right to uninterrupted possession."  *Id.* at 171 (Count VIII).  Finally, Plaintiff claims that Defendants' deprived Plaintiff of Plaintiff's federal statutory protectable property interest in property unlawfully seized by the Defendants.  *Id.* at 177 (Count IX).  Plaintiff argues that it is entitled to summary judgment on its substantive due process claims because the work and installations that Plaintiff completed before the Town revoked the permits and seized Plaintiff's property is for nothing if the project cannot be completed.  According to Plaintiff, there are no genuine issues of material fact with respect to the revocation and seizure and therefore Plaintiff is entitled to summary judgment.  Pl. Mem. at 29.  Defendants argue that Plaintiff's Section 1983 claim fails because they do not have a property interest entitled to Fourteenth Amendment protection.  Def. Opp. Mem. at 31.  In addition, Defendants move for summary judgment on each of Plaintiff's three Section 1983 claims on the grounds that a municipality may not be held liable on a respondeat superior theory of liability and with respect to Count IX, Plaintiff's claim fails because Plaintiff has not alleged that Defendants "interfered" with a radio communication as that term is defined by the FCC.  Def. Mem. at 31-32.

"Substantive due process protects against government action that is arbitrary, conscience

shocking, or oppressive in a constitutional sense." *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 230 (E.D.N.Y. 2014) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995). "[S]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.'" *Id.* (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). "A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard." *Id.* (citing *B.D. v. DeBuono*, 130 F.Supp.2d 401, 432–33 (S.D.N.Y. 2000)).

To prevail on either a substantive or a procedural due process claim, a plaintiff must show that he or she possessed a protected liberty or property interest. *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 132 (2d Cir. 1998) ("[T]he threshold inquiry in a substantive due process analysis is whether the property interest claimed rises to the level of a property interest cognizable under the substantive Due Process Clause."); *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005)("only where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise"); *McMenemy v. City of Rochester,* 241 F.3d 279, 285–86 (2d Cir. 2001)(to prevail on a Fourteenth Amendment procedural due process claim, a plaintiff must show that he or she "possessed a protected liberty or property interest, and that he [or she] was deprived of that interest without due process")). Further, to establish a procedural due process claim, a plaintiff must establish that he or she was deprived of that interest without due process of law. *Id.* (citing *Kassim v. City of Schenectady,* 255 F.Supp.2d 32, 37 (N.D.N.Y.2003)).

Plaintiff identifies two distinct property interests which it claims give rise to a substantive

31

due process claim.[10]  First, it claims to have a property interest in the Road Opening Permits issued but then revoked by the Town, and second it claims to have a property interest in the equipment seized by the Town.  *See* Am. Compl. ¶¶ 162-178.

Turning first to the road opening permits, before considering if Plaintiff is entitled to summary judgment on this claim the Court must evaluate whether Plaintiff is entitled to move forward on its substantive due process claim.  In order to state a claim, Plaintiff must demonstrate that it was clearly entitled to the permit in question.  Where, as here, a plaintiff claims a substantive due process interest in a benefit, it must show "a legitimate claim of entitlement" to the benefit, which is more than "a unilateral expectation" or an "abstract need or desire."  *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Up State Tower Co. v. Town of Cheektowaga*, No. 1:19-cv-56, 2019 U.S. Dist. LEXIS 174397 (W.D.N.Y. July 1, 2019).  "The question of entitlement turns on whether the local authority has discretion to deny what is sought or, in the alternative, whether relief must be granted based upon objectively ascertainable criteria."  *Id.*   In *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir. 1985), the court focused on whether the landowner had "a legitimate claim of entitlement" to the license he sought and determined that the test for this inquiry is whether "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted."  *Id*. at 59.  "The Second Circuit has instructed that the *Yale Auto Parts* 'entitlement' test be applied with 'considerable rigor.'"  *Vertical Broadcasting, Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 392 (E.D.N.Y. 2000) (quoting *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989)).  "If the deciding authority has discretion to deny an application for a benefit on non-arbitrary grounds, a

---

[10] "The issue of whether a protected property interest exists is a matter of law for the court to decide." *Vertical Broadcasting, Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 392 (E.D.N.Y. 2000).

plaintiff holds no legitimate claim to that benefit and, thus, no substantive due process interest." *Stahl York Ave. Co., LLC v. City of N.Y.*, No. 14 CIV. 7665 ER, 2015 U.S. Dist. LEXIS 66660, 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015) (citing *RRI Realty*, 870 F.2d at 918).

Here, in support of its motion for summary judgment on this claim, Plaintiff argues that the Town's actions were arbitrary and capricious without addressing the threshold issue of its entitlement to the Road Opening Permits. *See* Pl. Mem. at 27-28. In opposition to Plaintiff's motion for summary judgment, Defendants argue that Plaintiff has failed to identify a property interest entitled to Fourteenth Amendment protection. Def. Opp. Mem. at 31. The Court agrees.[11] In the instant case, Plaintiff cannot satisfy the *Yale Auto Parts* entitlement test. First, Plaintiff fails to provide any facts suggesting that if given adequate procedural safeguards, there was a "certainty or a very strong likelihood" that Plaintiff's applications would not have been revoked. The Town Code in question provides the Town consent must be obtained prior to entering the Town right of way. Plaintiff has attached numerous exhibits to its motion for summary judgment regarding negotiations for the approval of the Road Opening Permits. Pl. Mem. at 4. Clearly, Plaintiff is aware that the granting of the Road Opening Permit was far from a certainty and therefore Plaintiff is not entitled to the permit and no property right vests. In light of the fact that the "court considers the property right issue as a threshold matter, a civil rights

---

[11] Plaintiff's cite *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 47, 665 N.E.2d 1061, 643 N.Y.S.2d 21 (1996) for the proposition that when a permit is issued and the permitholder relies on that permit to do authorized work a property interest is created. However, *Magee* is readily distinguishable from the instant action because Plaintiff here does not own the property in question – i.e., the Town right of way – but rather is seeking to erect an antenna on the Town's land. Under New York law, "a vested right can be acquired when, pursuant to a legally issued permit, the landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes and incurring substantial expenses to further the development." *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 47, 665 N.E.2d 1061, 643 N.Y.S.2d 21 (1996) (citations omitted). "However, neither the issuance of the [permit], nor the landowner's substantial changes and expenditures, standing alone, will establish a vested right." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 450-51 (S.D.N.Y. 1998) (citing *Magee*, 88 N.Y.2d at 47). Rather, "the landowner's reliance on the [permit] must have been so substantial that the municipal action 'results in serious loss rendering the improvements essentially valueless.'" *Id*. at 451 (quoting *Magee*, 88 N.Y.2d at 48). Here, since Plaintiff's did not own the land, there were no improvement made to it pursuant to the issuance of the permits.

33

due process claims [sic] may be rejected without the necessity of exploring whether the local authority has acted in an arbitrary manner." *Vertical Broadcasting, Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 392 (E.D.N.Y. 2000); *see RRI Realty*, 870 F.2d at 918 (determining that plaintiff had no property right in the building permit and declining to consider "whether denial of the permit violated substantive due process").

Moreover, since the cease and desist letter revoked the Road Opening Permits based upon the Town's realization that Plaintiff had failed to obtain required Building Permits and Special Use Permits prior to installing their equipment, no vested property right attached to the Road Opening Permits. "New York courts have repeatedly held that a landowner does not have a vested property right to a building permit issued erroneously by a building inspector, and that there can be no estoppel against the government in such a situation*." Gottlieb v. Village of Irvington*, 69 F.Supp.2d 553, 557-58 (S.D.N.Y. 1999) (citing *Parkview Assocs. v. City of New York*, 71 N.Y.2d 274, 525 N.Y.S.2d 176, 519 N.E.2d 1372 (1988); *McGannon v. Board of Trustees of the Village of Pomona*, 239 A.D.2d 392, 657 N.Y.S.2d 745 (2d Dept. 1997)); *see also Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 195 (N.D.N.Y. 2007) (plaintiff "failed to establish a valid property interest because it is undisputed that [defendant] issued the" permit in error).

Similarly, with respect to Count VII, in its reply memorandum, Defendants argue that Plaintiff's did not have a vested interest in the Road Opening Permits and therefore no constitutional claim can lie. Def. Reply Mem. at 9. As discussed above, the Court finds that Plaintiff does not have a vested interest in the permits. *See Cox v. City of New York*, No. 13-CV-163, 2014 U.S. Dist. LEXIS 100552 at * 25, 2014 WL 3696003 (E.D.N.Y. July 23, 2014) (where plaintiff cannot establish liability for injury resulting from a constitutional violation and it cannot establish municipal liability based on pattern and practice).

34

Accordingly, the undersigned respectfully recommends that Plaintiff's motion for summary judgment on Count VII, which is based on Defendants' revocation of the Road Opening Permits, be denied and that Defendants' motion for summary judgment seeking dismissal of the claim be granted.

Plaintiff's also assert Section 1983 claims for Defendants' seizure of Plaintiff's equipment from two personal wireless services facilities.[12]  Am. Compl Count VIII and Count IX.  Not every wrong committed by a state actor is actionable under § 1983; only those wrongs that rise to a constitutional violation are actionable.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 854, 118 S. Ct. 1708, 1720, 140 L. Ed. 2d 1043 (1998).

Plaintiff alleges the seizure of their 2 utility poles violated the Fourteenth Amendment right to due process of law.  Plaintiff does not distinguish between substantive and procedural due process.  "If a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Pabon v. Wright*, 459 F.3d 241, 252-53 (2d Cir. 2006).  Typically, a claim for unlawful seizure should be brought pursuant to the Fourth Amendment.  *See, e.g., Nadeau v. Anthony,* No. Civ.A. 303-cv-34 (AWT), 2003 U.S. Dist. LEXIS 21722, 2003 WL 22872150, at *2 (D. Conn. Dec. 2, 2003) ("The defendant contends that claims for violation of the rights to be free from unreasonable search and seizure, arrest without probable cause and malicious prosecution, must be asserted as claims for violation of Fourth Amendment rights, not as claims for violation of the Fourteenth Amendment right to substantive due process. The court agrees.").  A "[s]ubstantive due process analysis is therefore inappropriate in this case if the claim is covered by the Fourth

---

[12] In Count IX Plaintiff alleges the seizure was violative of 47 U.S.C. § 333, which prohibits interference with radio communications.

Amendment." *Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 232 (E.D.N.Y. 2014). Accordingly, the Court treats Plaintiff's claims for the unlawful seizure of its equipment as claims under the procedural due process clause of the Fourteenth Amendment.

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). Notice and an opportunity to be heard are the hallmarks of due process. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Brody v. Vill. of Port Chester*, 434 F.3d 121, 131 (2d Cir. 2005) (holding that "if reasonable notice and opportunity for a hearing are given, due process will be satisfied").  In the Amended Complaint Plaintiff alleges that "Crown Castle had a vested protectable property interest in its equipment and a lawful right to uninterrupted possession.  Defendants had no legitimate reason for the seizure of Crown Castle's property."  Am. Compl. at ¶¶ 171, 177.  It is undisputed that the Town never held a formal hearing providing Plaintiff the opportunity to oppose the revocation of the Road Opening Permits.  Pl. Rule 56.1 Stmt. ¶ 78.  However, Plaintiff was put on notice by letter dated May 10, 2017, that its continued operation and installation of equipment on Town land had to come to an end.  Plaintiff was given an opportunity through this notice to remove their property.[13]  Notwithstanding this notice, Plaintiff

---

[13] This Court has no doubt that upon receipt of this notice Plaintiff was advised that they had no right to continue their presence on the Town right of way and yet they failed to act.  Thus, Defendants ere left with no other choice

36

declined to take action to secure their property.  Over a month later, in a letter dated June 30, 2017 the Town informed Plaintiff their property was removed from the Town's right of way where the equipment had no right to be.   Plaintiff cannot on this record establish that its equipment was wrongfully seized.  Accordingly, it is respectfully recommended that Plaintiff's motion for summary judgment with respect to Counts VIII and IX of the Amended Complaint be denied.

Defendants have moved for summary judgment with respect to Plaintiff's § 1983 claims on the grounds that the Town cannot be held liable under Section 1983 on a respondeat superior theory of liability.  Def. Mem. at 31.  Plaintiff contends that it has not sought to impose liability on a theory of respondeat superior but rather claims that the Town instituted a ban against all installation of personal wireless facilities in the Town right of way and that policy led the Town to revoke the 22 Road Opening Permits and seize Plaintiff's wireless telecommunication equipment.  Pl. Opp. at 23.

"A plaintiff who seeks to recover against a municipality under § 1983 must show that the violation of his constitutional rights resulted from a municipal policy or custom." *Davis v. City of New York*, 75 Fed. Appx. 827, 829 (2d Cir. 2003) (citations omitted); *see Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Defendants are correct that a municipality may not be held liable under Section 1983 on a respondeat superior theory of liability for its employees' alleged constitutional violations.  *See Monell*, 436 U.S. at 691("a municipality cannot be held liable solely because it employees a tortfeasor, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory"); *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 870 (2d Cir. 1992) ("A municipality may not be held liable

---

but to remove Plaintiff's property.

under § 1983 simply for the isolated unconstitutional acts of its employees"); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 497 (E.D.N.Y., 2009) ("Municipalities, including school boards, cannot be held vicariously liable for the actions of an employee under § 1983."). In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipality such as the Town, "a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Torres v. City of New York,* No. 13-CV-7091 (ARR)(RER), 2013 U.S. Dist. LEXIS 179260, 2013 WL 6835170, at *2 (E.D.N.Y. Dec. 18, 2013). While Plaintiff argues that the Town's de facto moratorium against all installations of personal wireless services in the Town right of way constituted an official policy of the Town, as discussed above, the facts as presented by the parties to not support the conclusion that such a ban was ever in place. Accordingly, in light if Plaintiff's failure to identify a an officially adopted policy or custom it is respectfully recommended that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment with respect to Counts VIII and IX be granted.

### B.    State Claims

Finally, Defendants argue that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims if the Federal claims are dismissed. Def. Mem. at 33.[14] "[A] federal court should generally decline to exercise supplemental jurisdiction over state law claims, if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction and the complaint's federal claims are dismissed in the litigation's 'early

---

[14] Similarly, Defendants' state law counterclaims, each of which seek a declaration that Plaintiff was required to comply with Town Code, are before this Court pursuant to pendent jurisdiction and to the extent the federal claims have been dismissed, Defendants' counterclaims should be dismissed as well. *See, e.g., Buti v. Impressa Perosa, S.R.L.*, 935 F. Supp. 458, 475 (S.D.N.Y. July 18, 1996) (dismissing state law counterclaims without prejudice); *Rubin Bros. Footwear, Inc. v. Chemical Bank*, 119 B.R. 416, 422 (S.D.N.Y. 1990) (same).

stages.'" *Pelt v. City of New York*, No. 11-CV-5633, 2013 U.S. Dist. LEXIS 122848, 2013 WL 4647500, at *19 (E.D.N.Y. Aug. 28, 2013) (internal quotation marks and citations omitted); *see Choe v. Fordham Univ. Sch. of Law*, 81 F.3d 319, 319 (2d Cir. 1996) (holding it is clear a district court holds discretion to "decline supplemental jurisdiction [over state law claims] when all claims over which the district court had original jurisdiction have been properly dismissed"); *see also* 28 U.S.C. § 1367(c)(3); *Crown Castle NG E. LLC v. City of Rye*, No. 17 CV 3535, 2017 U.S. Dist. LEXIS 202528 at *15, 2017 WL 6311693 (S.D.N.Y. Dec. 8, 2017) (declining to exercise jurisdiction over Plaintiff's claims under CPLT Article 78 and NY Tran. Corp. Law Section 27 where Plaintiff's federal claims dismissed).  Moreover, while a court possesses the discretion to retain jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (internal quotation marks and citation omitted).

In addition to claims for conversion and trespass to chattel, Plaintiff has asserted a CPLR Article 78 claim.  The Town argues that this Court should not exercise supplemental jurisdiction over Crown Castle's Article 78 claim because some federal courts have declined to hear Article 78 claims. It is clear that a plaintiff may also bring an action under Article 78 for the denial of use permit in federal court.  *T-Mobile Ne. LLC v. Town of Islip*, 893 F. Supp. 2d 338, 373 (E.D.N.Y. 2012) ("Although 'Article 78 imposes its own requirement that local decisions be supported by substantial evidence' the test for relief from a zoning board's decision under Article 78 'is essentially the same as that under the TCA'") (citations omitted); *New Cingular Wireless PCS, LLC v. Town of Fenton*, 843 F. Supp. 2d 236, 253 (N.D.N.Y. 2012) (hearing denial of permit claims both under TCA and Article 78); *N.Y. SMSA Ltd. P'ship v. Vill. of Floral Park Bd. of Trs.*,

39

812 F. Supp. 2d 143, 166-67 (E.D.N.Y. 2011) (same); *MetroPCS N.Y., LLC v. Vill. of E. Hills*, 764 F. Supp. 2d 441, 448-49 (E.D.N.Y. 2011) (same).  However, because an Article 78 claim is based on state law, this Court is only empowered to entertain this claim through an exercise of its supplemental jurisdiction.  28 U.S.C. § 1367.  "The overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so." *Clear Wireless L.L.C. v. Bldg. Dep't of Lynbrook*, No. 10–CV–5055, 2012 WL 826749, at *9 (E.D.N.Y. Mar. 8, 2012); *see Medrano v. Margiotta*, CV 15-3704 (JMA) (ARL), 2017 U.S. Dist. LEXIS 23390 (E.D.N.Y. Feb. 16, 2017) (citing cases

Here, even assuming that the Court could properly exercise supplemental jurisdiction over Plaintiff's Article 78 claim under 28 U.S.C. § 1367, the Court has discretion to decline to do so if there are "compelling reasons for declining jurisdiction." *Id.* § 1367(c)(4).  The Court agrees with the essentially unanimous position of the New York federal district courts that "'[t]he very nature of an Article 78 proceeding presents such compelling reasons.'" *Nat'l Fuel Gas Supply Corp. v. Town of Wales*, 904 F. Supp. 2d 324, 336 (W.D.N.Y. 2012) (quoting *Morningside*, 432 F. Supp. 2d at 347); *see also Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 210 (W.D.N.Y. 2103) ("[I]t is appropriate to decline supplemental jurisdiction over Article 78 claims in most cases.") (citing *N.Y. State Corr. Officers & Police Benevolent Assoc., Inv. v. New York*, 911 F. Supp. 2d 111, 132 (N.D.N.Y. 2012)); *Kent v. New York*, No. 1:11–CV–1533, 2012 WL 6024998, at *11 (N.D.N.Y. Dec. 4, 2012) ("While it is true that the federal claims and state-law issues arise out of the same operative set of facts, this Court declines to exercise supplemental jurisdiction over plaintiffs' Article 78 claim because to do so would require this Court to interpret state law before the New York State courts have an opportunity to analyze and

resolve the issues."); *Bd. of Managers of Soho Int'l Arts Condominium v. City of New York*, No. 01 Civ. 1226, 2004 WL 1982520, at *28 (S.D.N.Y. Sept. 8, 2004) ("The Article 78 proceeding is a unique state procedural law best left to the expertise of the state courts, the very places where the state legislature intended such actions to be tried.").

In light of the recommended dismissal of all claims over which it has original jurisdiction, the undersigned reports and recommends that the District Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims for conversion, trespass to chattel, violation of N.Y. Trans. Corp. Law Section 27 and CPLR Article 78 as well as Defendants' counterclaims and that such claims be dismissed without prejudice.

## IV.    Plaintiff's Motion to Strike the Declaration and Rebuttal Expert Report

Plaintiff moves to strike the Declaration and Rebuttal expert Report of Roger Mascetti (the "Declaration") submitted in support of Defendants' summary judgment motion on the grounds that the Declaration is not based on personal knowledge or the expert's own opinion based on facts and data, but is rather the opinion of Defendants' counsel.  Defendant opposes the motion.

"Whether to grant or deny a motion to strike is vested in the trial court's sound discretion."  *Peters v. Molloy College of Rockville Centre*, No. CV 07-2553 (DRH) (ETB), 2010 WL 3170528, at *1 (E.D.N.Y. Aug. 10, 2010) (internal quotation marks and citations omitted). When resolving a motion to strike, courts use "a scalpel, not a butcher knife." *Pharmacy, Inc. v. American Pharm. Partners*, No. 05-776 (DRH) (AKT), 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007) (quoting *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001) (internal quotation marks omitted)).  That is to say, "the court will strike only those portions that are improper."  *Id.*  "When seeking to strike, the moving party bears a heavy burden, as courts

generally disfavor motions to strike." *Peters*, 2010 WL 3170528, at *1 (internal quotation marks and citations omitted.)

Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part that, in the context a motion for summary judgment, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). Thus, "[a] court . . . may strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000) (holding district court acted within its discretion when it struck portions of an affidavit that contained legal arguments and "more resemble[d] an adversarial memorandum than a *bona fide* affidavit"). "Alternatively, a court may, in considering a motion for summary judgment, simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." *Flaherty v. Filardi*, No. 03 Civ. 2167, 2007 WL 163112, at *4 (S.D.N.Y. Jan. 24, 2007) (internal quotation marks and citations omitted); *see Peters*, 2010 WL 3170528, at *1 (same); *see also Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003) ("To the extent that an affidavit or declaration contains material that does not comply with Rule 56(e), the Court may strike those portions, or may simply disregard them").

Here, in light of the Court's determination with regard to its lack of jurisdiction over Plaintiff's claims pursuant to the Telecommunications Act, the Court finds it unnecessary to consider the Declaration and Expert Report of Roger Mascettis. Accordingly, the undersigned respectfully recommends that Plaintiff's motion to strike be denied as moot.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997).


Dated:   Central Islip, New York
         February 21, 2020

                                    _____/s_____
                                    ARLENE R. LINDSAY
                                    United States Magistrate Judge

43