UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CROWN CASTLE NG EAST LLC,

                                    Plaintiff,

        -against-                                    17-CV-3445(SJF)(ARL)


THE TOWN OF OYSTER BAY, THE TOWN OF
OYSTER BAY TOWN BOARD, RICHARD LENZ
in his official capacity as Commissioner of the Town
of Oyster Bay Highway Department and Department
of Public Works, and JOHN BISHOP in his official
capacity as Deputy Commissioner of the Town of
Oyster Bay Highway Department,

                                    Defendants.
_____


**Plaintiff's Objections to
Magistrate Judge Lindsay's Report and Recommendation**


                        SNYDER & SNYDER, LLP
                        Robert D. Gaudioso
                        Carlotta Cassidy
                        94 White Plains Road
                        Tarrytown, NY 10591
                        914.333.0700
                        rgaudioso@snyderlaw.net
                        ccassidy@snyderlaw.net


Dated: March 6, 2020

## Table of Contents

TABLE OF AUTHORITIES  ...........................................................................i-ii

INTRODUCTION ...................................................................................1

ARGUMENT

I.     LEGAL STANDARD.................................................................1

II.    THE MAGISTRATE JUDGE ERRED WHEN SHE HELD THAT
THE COURT DOES NOT CONSIDER MOTIVATION WHEN
EVALUATING JURISDICTION BECAUSE 47 U.S.C.
§ 332(c)(7)(B)(iv) REQUIRES THE COURT TO CONSIDER
MOTIVATION FOR JURISDICTIONAL PURPOSES ................................2

    a.  Unlike in traditional local zoning, motivation must be considered to
properly evaluate jurisdiction under 47 U.S.C. § 332(c)(7)(B)(iv)
and (v) ..........................................................................2

    b.  The issue is not whether the Town is estopped from requiring
permits; it is whether the Town is discriminating, requiring permits
selectively in violation of federal law ..........................................4

        i.  Crown Castle refuted the claims in the Zike Declaration,
and the 13 building permits were likely for installations on
private property and not in the public right-of-way, but the
Court and Crown Castle cannot determine this without
seeing these permits ........................................................6

        ii.  The Magistrate Judge disregarded Crown Castle's evidence
that no other utilities are required to obtain building permits
for installations in the public-right-of-way ....................................8

    c.  The Magistrate is incorrect to find that the Town was "left with no
other choice but to remove Plaintiff's property" ........................................10

III.   THE MAGISTRATE JUDGE ERRED WHEN SHE RECOMMENDED
THAT THE COURT DENY CROWN CASTLE SUMMARY
JUDGMENT ON ITS 47 U.S.C. § 253(a) CLAIM BECAUSE CROWN
CASTLE DID NOT ALLEGE THAT THE TOWN WAS ENFORCING
AN UNCONSTITUTIONAL ORDINANCE....................................................11

    a.  Town *actions* can be "Legal requirements" that violate Section 253(a) ....12

b.  The Zike Declaration does not belie Crown Castle's position that the
Town's actions were a *de facto* moratorium ...............................................13

IV.  THE MAGISTRATE ERRED WHEN SHE FOUND THAT "NOTHING
IN THE RECORD INDICATES THAT CROWN CASTLE WAS
GIVEN SIMILAR GUIDANCE WITH RESPECT TO THE
INSTALLATION OF ITS OWN UTILITY POLES IN THE TOWN
RIGHT OF WAY" ........................................................................................13

V.  THE MAGISTRATE JUDGE ERRED WHEN SHE CONCLUDED
THAT THERE IS NO DISPUTE OVER THE SIZE OF THE
ANTENNAS, WHICH DETERMINES WHETHER BUILDING
PERMITS WERE NEEDED ...........................................................................14

VI.  THE MATISTRATE JUDGE INCORRECTLY FOUND THAT
PLAINTIFF NEEDED SPECIAL PERMITS TO INSTALL THE
FACILITIES IN THE TOWN RIGHT-OF-WAY...........................................15

VII.  THE MAGISTRATE JUDGE ERRED WHEN SHE HELD THAT
THERE WAS NO SUBJECT MATTER JURISDICTION BECAUSE
THERE WAS NO FINAL ACTION WHEN CROWN CASTLE DID
NOT APPLY FOR BUILDING PERMITS OR SPECIAL USE
PERMITS......................................................................................................16

a.  The revocation of the Highway Permits was a final action .......................16

b.  The Town's inaction on the two remaining applications was also a
final act of effective denial because under federal law the Shot-Clock
did apply, contrary to the Magistrate Judge's holding...............................17

VIII.  THE MAGISTRATE JUDGE INCORRECTLY FOUND THAT
CROWN CASTLE DID NOT HAVE A VERY STRONG
LIKELIHOOD OF OBTAINING THE HIGHWAY PERMITS AND
THUS, CROWN CASTLE HAD NO PROPERTY INTEREST IN THE
22 HIGHWAY PERMITS IT LEGALLY RECEIVED .................................17

IX.  THE MAGISTRATE JUDGE INCORRECTLY FOUND THAT
CROWN CASTLE HAD NOTICE TO REMOVE ITS EQUIPMENT
IN THE TOWN FROM THE CEASE AND DESIST LETTER AND
THEREFORE, THERE WAS NO UNLAWFUL SEIZURE OF CROWN
CASTLE'S TWO FACILITIES ......................................................................19

X.      THE MAGISTRATE JUDGE ERRED WHEN SHE GRANTED ALL
        OF DEFENDANTS' COUNTERCLAIMS FOR ALL OF THE
        REASONS STATED ABOVE AND BECAUSE THE MAGISTRATE
        FOUND THAT THE COURT HAD NO SUPPLEMENTAL
        JURISDICTION TO REVIEW STATE CLAIMS ...........................................20

Conclusion .......................................................................................................................21

## Table of Authorities

**CASES**

Ass'n of Car Wash Owners, Inc. v. City of N.Y., 911 F.3d 74 (2d Cir. 2018) .........7-8

Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,
    769 F.2d 919 (2d Cir. 1985)...........................................................................8

Carmody v. Vill. of Rockville Ctr., 661 F. Supp. 2d 299 (E.D.N.Y. 2009) ..............1-2, 2

Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490 (2d Cir. 1999)....................2-3, 3

Credant Mortgage Corp. v. Saxon Nat'l Mortgage,
    492 F. Supp. 2d 119 (E.D.N.Y 2007) ...........................................................1

DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124 (2d Cir. 1998) .................18

Greene v. Brentwood Union Free Sch. District,
    966 F. Supp. 2d 131 (E.D.N.Y. 2013) ...........................................................1-2, 2

Jewish Reconstructionist Synagogue of No. Shore, Inc.
    v. Inc. Vill. of Roslyn Harbor, 40 N.Y.2d 158 (1976)..................................20-21

LaTrieste Rest. and Cabaret Inc. v. Vill. of Port Chester,
    40 F.3d 587 (2d Cir. 1994)...............................................................................5

Meloff v. N.Y. Life Ins. Co., 51 F.3d 372 (2d Cir. 1995) ........................................7

MetroPCS N.Y., LLC v. City of Mount Vernon,
    739 F. Supp. 2d 409 (S.D.N.Y. 2010)...........................................................20-21

N.Y. SMSA LP v. Town of Oyster Bay Zoning Bd. of Appeals,
    2010 WL 3937277 (E.D.N.Y. Sept. 30, 2010) ..............................................3

Qwest Commc'ns Corp. v. City of New York,
    387 F. Supp. 2d 191 (E.D.N.Y. 2005) ...........................................................5

RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911 (2d Cir. 1989) ..........18

S.E.C. v. Callahan, 103 F. Supp. 3d 296 (E.D.N.Y. 2015)......................................2

TCG N.Y., Inc. v. City of White Plains, 305 F.3d 67 (2d Cir. 2002)........................5

T-Mobile Northeast LLC v. Town of Ramapo,
    701 F. Supp. 2d 446 (S.D.N.Y. 2009)...........................................................11

Zervos v. Verizon N.Y., Inc., 252 F.3d 163 (2d Cir. 2001)......................................2

**STATUTES**

28 U.S.C. § 636..............................................................................................1

28 U.S.C. § 636(b)(C)......................................................................................1

47 U.S.C. § 253..............................................................................................7

47 U.S.C. § 253(a)....................................................................................11, 12, 12-13

47 U.S.C. § 253(c)........................................................................................4, 5

47 U.S.C. § 332............................................................................................4, 7

47 U.S.C. § 332(c)(7)(B)(iv).................................................................2, 3, 6, 10, 16

47 U.S.C. § 332(c)(7)(B)(v)..................................................................2, 3, 10, 16

Fed. R. Civ. P. 56(d)....................................................................................7-8

Fed. R. Civ. P. 65.........................................................................................19

Fed. R. Civ. P. 72.........................................................................................1

Fed. R. Civ. P. 72(a)....................................................................................1

Fed. R. Civ. P. 72(b)....................................................................................1

Town of Oyster Bay Town Code 205-21......................................................17-18

**ADMINISTRATIVE RULES, REGULATIONS, AND MATERIALS**

Sandwich Isles Order, 32 F.C.C.R. 5878 (2017)........................................12

State of Minnesota, 14 F.C.C.R. 21706 (1999).........................................12

## INTRODUCTION

Plaintiff Crown Castle NG East LLC ("Crown Castle"), by its undersigned counsel and pursuant to Federal Rules of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(C), objects to certain portions of Magistrate Judge Lindsay's Report and Recommendation, which was filed on February 21, 2020. (Docket Entry ["DE"] 101).

The Report and Recommendation concerns the motions for summary judgment submitted by Crown Castle and defendants the Town of Oyster Bay, the Town of Oyster Bay Town Board, Richard Lenz in his official capacity as Commissioner of the Town of Oyster Bay Highway Department and Department of Public Works, and John Bishop in his official capacity as Deputy Commissioner of the Town of Oyster Bay Highway Department (collectively, the "Town"). There was no oral argument.

For a full recitation of the facts, Crown Castle respectfully refers the Court to its Rule 56.1 Statement of Material Facts dated January 25, 2019. (DE 89-2).

## ARGUMENT

### I.   LEGAL STANDARD

Rule 72 of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C § 636, provide the standard for a district court's review of a magistrate judge's report and recommendation. *Credant Mortgage Corp. v. Saxon Nat'l Mortgage,* 492 F. Supp. 2d 119, 124 (E.D.N.Y. 2007). Rule 72(a) governs non-dispositive matters and directs district courts to apply a clear error standard of review. Rule 72(b), which governs dispositive motions, is different. *Id.* Unlike the clearly erroneous or contrary to law standard applied by Rule 72(a) to non-dispositive matters, Rule 72(b) directs a district court to review *de novo* timely objections to a magistrate judge's report and recommendation. *Greene v. Brentwood Union Free Sch. Dist.,* 966 F. Supp. 2d

131, 138 (E.D.N.Y. 2013); *Carmody v. Vill. of Rockville Ctr.,* 661 F. Supp. 2d 299, 303 (E.D.N.Y. 2009). Even when proper objections have not been filed, "the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations." *Greene,* 966 F. Supp. 2d at 138 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)); *Carmody v. Vill. of Rockville Ctr.,* 661 F. Supp. 2d at 304 (same).

Under *de novo* review, the magistrate judge's findings and rulings are not entitled to deference. *See Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 168 (2d Cir. 2001) ("*De Novo* review is review without deference."); *S.E.C. v. Callahan,* 103 F. Supp. 3d 296, 301-02 (E.D.N.Y. 2015) (citing *Zervos,* 252 F.3d at 168). Accordingly, this Court should conduct its own review of the specific issues described below.

## II. THE MAGISTRATE JUDGE ERRED WHEN SHE HELD THAT THE COURT DOES NOT CONSIDER MOTIVATION WHEN EVALUATING JURISDICTION BECAUSE 47 U.S.C. § 332(c)(7)(B)(iv) REQUIRES THE COURT TO CONSIDER MOTIVATION FOR JURISDICTIONAL PURPOSES.

In the Report and Recommendation[1], the Magistrate Judge wrote, "[a]bsent impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person, the Town's motivation, however, is irrelevant for purposes of the Court's evaluation of its jurisdiction." (RR p. 23). As detailed below, that analysis is incorrect for this claim.

### a. Unlike in traditional local zoning, motivation must be considered to properly evaluate jurisdiction under 47 U.S.C. § 332(c)(7)(B)(iv) and (v).

The Magistrate Judge is correct in that with traditional local zoning decisions, the court is deferential and limits "the scope of inquiry to the constitutionality of the zoning decision under a

---

[1] Hereinafter, Magistrate Judge Lindsay's Report and Recommendation filed on February 21, 2020 will be cited as "RR".

standard of rational review." *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 493 (2d Cir. 1999) (citation omitted). However, the court must review claims under the Communications Act "more closely than standard local zoning decisions." *Id.*; *N.Y. SMSA LP v. Town of Oyster Bay Zoning Bd. of Appeals,* 2010 WL 3937277, at *3 (E.D.N.Y. Sept. 30, 2010). The court's review must include "evidence opposed to the Town's view." *Oyster Bay,* 166 F.3d at 494 (citation omitted). Indeed, "***the method*** by which siting decisions are made is now subject to judicial oversight." *Id.* at 493 (emphasis added) (citing to § 332(c)(7)(B)(v)).

For a court to properly evaluate a claim that a municipality violated Section 332(c)(7)(B)(iv) of the Communications Act, the court must consider the municipality's motivation for its decision, action, or failure to act. Section 332(c)(7)(B)(v), which establishes that a plaintiff may seek relief in federal court, provides in part the following:

> (v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

47 U.S.C. § 332(c)(7)(B)(v). And Section 332(c)(7)(B)(iv), one of four subparagraphs describing the limits on local government under the Communications Act, expressly states that certain motivations are forbidden::

> (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7)(B)(iv).

The Magistrate Judge acknowledged that "Plaintiff devotes large portions of its motion papers supporting its position that the Town's motivation in revoking the permits was to quell

3

public outcry regarding health concerns." (RR p. 23). That is correct. (*See* DE 89-1 pp. 4-7, 23-25; DE 89-2 pp. 58-87). Under § 332, if the Town's motivation for regulating the placement and construction of Crown Castle's facilities is based on concern over radio frequency emissions, the Town's actions are infirm. That is the case in this matter.

The Town Supervisor's public statements in response to residents' unfounded fear of radio frequency emissions the eve before the Town Attorney issued a cease and desist letter, combined with subsequent public statements from Town Board members within weeks following the issuance of the letter, all reflect the Town's motivation behind the actions it took to bar Crown Castle, a provider of telecommunications and personal wireless services facilities, from the Town's right-of-way. (*See id.*). There is no question of material fact that the Town "regulate[d] the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions." Accordingly, Crown Castle is entitled to summary judgment.

b. **The issue is not whether the Town is estopped from requiring permits; it is whether the Town is discriminating, requiring permits selectively in violation of federal law.**

The Court must consider motivation under § 332. The timing of the Town's selective demand for building and special permits from Crown Castle also demonstrates that the Town's underlying motivation was in violation of federal law. Even if estoppel is an issue here – and it is not – a town may not selectively enforce its code under § 253(c) of the Communications Act.

Under Section 253(c) of the Communications Act, local government maintains authority "to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, *on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis*." 47 U.S.C. 253(c) (emphasis added).

4

As part of her review, the Magistrate Judge cites to *LaTrieste Rest. and Cabaret Inc. v. Vill. of Port Chester,* 40 F.3d 587, 590 (2d Cir. 1994) for the proposition that the Town cannot be estopped from applying its code. (RR p. 18). However, *LaTrieste* does not defeat Crown Castle's position. Although, generally, "principles of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow," … "selective enforcement" of the law is impermissible. *Id.*

Whereas in *LaTrieste,* the Court was discussing equal protection, here, the Communications Act protects providers of telecommunications services from discriminatory treatment by local government. *See TCG N.Y., Inc. v. City of White Plains,* 305 F.3d 67, 80 (2d Cir. 2002) (municipalities may not impose fees against one telecommunications services provider when it does not impose those fees against another provider); *Qwest Commc'ns Corp. v. City of New York,* 387 F. Supp. 2d 191, 194 (E.D.N.Y. 2005) (discriminatory treatment of telecommunications services providers "runs afoul of section 253(c)").

The evidence demonstrates that the Town issued the cease and desist letter, revoked the permits, and removed two of Crown Castle's facilities in response to the residents' concerns over radio frequency emissions. (DE 89-1 pp. 4-7, 32; DE 89-2 pp. 58-87). Approximately seven weeks after the issuance of the cease and desist letter, and only after the Town hired an outside attorney to represent it in this litigation, the Town, in another letter dated June 30, 2017, tried to revise history by claiming that the revocation of the Highway Permits and the removal of some of Crown Castle's equipment was because Crown Castle had not applied for a building permit or special use permit. (RR p. 37).

The Magistrate Judge disregards the timing of this evidence and does not address the language provided by Section 332(c)(7)(B)(iv) that requires the consideration of motivation. Instead, the Magistrate Judge concludes that the Town may not be estopped from applying its code.

The Magistrate Judge errs again when she found that the Town code was not discriminatorily enforced against Crown Castle for two reasons: (a) the Zike Declaration claims that between May 2017 and August 2017, the Town reviewed 21 applications for wireless communication structures and issued 13 building permits (RR p. 20 n. 7); and (b) that Crown Castle offers no support for its position that no other utilities were required to obtain building permits. (RR p. 20).

   i.   ***Crown Castle refuted the claims in the Zike Declaration, and the 13 building permits were likely for installations on private property and not in the public right-of-way, but the Court and Crown Castle cannot determine this without seeing these permits.***

Regarding the alleged issuance of the 13 building permits, the Magistrate Judge claims that Crown Castle did not refute the Zike Declaration's claim. The Magistrate Judge is incorrect.

 In Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated February 25, 2019, Crown Castle distinguished the Zike Declaration, explaining that while the Town claims it granted 13 building permits for wireless infrastructure installations, those permits were "*not in the Town's ROW [right-of way]*." (DE 87 p. 10 n. 3 (emphasis in original)). Crown Castle then cited to paragraph 66 of the Gaudioso Declaration dated January 25, 2019. (DE 89-9). Paragraph 66 states:

> In request no. 6 of Crown Castle's requests for production to the Town, Crown Castle sought "[c]opies of all permits issued by the Defendants for use of or construction within the rights-of-way." Although the Town agreed to produce responsive, nonprivileged documents in response to this request, the Town never produced any, presumably because such permits do not exist. Attached as Exhibit 55 is a true copy of Defendants' Response to Plaintiff's Request for Production of Documents, dated, March 13, 2018.

In addition to the fact that the Town did not claim that the permits were for structures in the Town's right-of-way (which means they were likely issued for structures on private property) and the fact that the Town did not produce those requested permits during discovery when Crown Castle demanded them, the Town also did not attach those permits as exhibits to the Zike Declaration. By failing to provide the copies of the 13 building permits as evidence, the Town cleverly obfuscated the Court's analysis of whether the Town discriminated against Crown Castle in violation of Sections 253 and 332 of the Communications Act. This obfuscation caused the Magistrate Judge to err by finding no subject matter jurisdiction when the Court did not have the necessary information of whether those permits were for locations within the Town's right-of-way.

Thus, at a minimum, the parties have a genuine dispute of material fact concerning the Town's selective enforcement of its code where wireless infrastructure in the Town's right-of-way is concerned.

In addition, the Magistrate Judge erred by finding that the Town did not discriminate against Crown Castle because it issued the 13 building permits when the issue of whether the permits are for locations in the Town's right-of-way has not been resolved. *See Meloff v. N.Y. Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir. 1995) (finding district court was "over-hasty in granting [defendant] judgment" when plaintiff had explained in an affidavit why she did not have the facts she needed to adequately oppose defendant) [2]; *Ass'n of Car Wash Owners, Inc. v. City of N.Y.,* 911

---

[2] At the time of this decision, Fed. R. Civ. P. 56(f) provided the procedural authority for the district court to order additional discovery or "make such other order as is just." *Meloff,* 51 F.3d at 375. Today, 56(d) supplants Rule 56(f) and provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;

F.3d 74, 83-84 (2d Cir. 2018) (finding district court erred in granting summary judgment when there was a genuine dispute of material fact that could be addressed by additional discovery). Even a party who fails to use its discovery time properly and does not "'seek more time until after a summary judgment motion has been filed'" may be granted this discovery upon a "'strong showing of need.'" *Id.* at 84 (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 927-28 (2d Cir. 1985)).

Here, Crown Castle asked for the relevant discovery, seeking copies of permits the Town issued for "construction within the rights-of-way." (DE 89-9 ¶ 66; DE 89-63 p. 8). The Town never produced these permits. Instead, the Town claimed for the first time in the Zike Declaration, which accompanied its summary judgment papers, that the Town had issued 13 building permits for wireless infrastructure in the Town. (DE 7 ¶ 3). As stated earlier, the key but unanswered question is whether these permits were issued for construction on private property or within the Town's right-of-way. Without knowing this information, a genuine issue of material fact remains.

    **ii.** ***The Magistrate Judge disregarded Crown Castle's evidence that no other utilities are required to obtain building permits for installations in the public right-of-way.***

On page 20 of the Report and Recommendation, the Magistrate Judge erred when she concluded that "Plaintiff provides no support for [the] conclusory statement" that "no other utility is required to obtain a permit." This assessment is incorrect.

Crown Castle cited to the sworn testimony of the Town's Planning and Development Commissioner, whose primary role is to oversee the application of the Town's building code. (DE 89-2 ¶ 11; p. 3; DE 91 p. 3 (citing to Gaudioso Feb. Decl. ¶ 10, Ex. 3 64:16—65:3); DE 87 (same).

---

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

In Exhibit 3 to the Gaudioso Declaration, dated February 25, 2019 (DE 85-3), which accompanied Crown Castle's reply and opposition papers, the Planning and Development Commissioner testified to the following:

> Q.    Has the Town ever required a building permit for a utility pole in the State right-of-way?
>
> A.    Not to my knowledge.
>
> Q.    Has the Town ever required a building permit for a utility pole in the County right-of-way?
>
> A.    Not to my knowledge.
>
> Q.    Has the Town ever required a building permit for a utility pole within the Town's right-of-way?
>
> A.    Not to my knowledge.

(DE 89-2 ¶ 11; DE 85-3 64:16—65:3). The Planning and Development Commissioner's testimony is clear. The Town did not require other utilities to obtain building permits to install utility poles in the Town's right-of-way. The Town eventually claimed that it required Crown Castle to get permits beyond the Highway Permits because the Town needed a rationalization for revoking Crown Castle's Highway Permits, issuing a cease and desist order, and seizing two facilities. This rationalization served as a pretext for the federally preempted basis for the Town's action, which was the residents' unfounded fears concerning radio frequency emissions.

### c. The Magistrate is incorrect to find that the Town was "left with no other choice but to remove Plaintiff's property."

The Magistrate Judge incorrectly finds that the Town had "no other choice but to remove [Crown Castle's] property." (RR p. 36 n. 13). The clearest evidence comes from the testimony of the Town's Rule 30(b)(6) witness, Gregory Carman, who was the Deputy Supervisor for the Town. The Deputy Supervisor testified (a) the Town removed two of Crown Castle's poles and equipment because "[p]eople had concerns about – right or wrong, about health effects, about how the placement of the equipment might affect the value you've [sic] their homes and that Crown Castle didn't place their equipment in locations that might be better suited, you know, for the residents in a particular neighborhood." (DE 89-18 37:19—38:7). Crown Castle cited to this evidence in its its Rule 56.1 Statement of Material Facts (DE 89-2 ¶ 84), which stated that "Deputy Supervisor Carman admitted in his deposition as the Town's 30(b)(6) witness that the Town removed Crown Castle's two poles and equipment due to residents complaining that the poles were in front of their homes and they had health concerns, among other things. Gaudioso Decl. ¶ 19, Ex. 9 at 36:22-38:15." The Town, in its Objections to Plaintiff's Statement of Material Facts, did not dispute this fact. (DE 90-32 ¶ 84). Despite the undisputed testimony of the Deputy Supervisor, which the Magistrate Judge acknowledges (*see* RR p. 10), the Magistrate Judge still incorrectly found that the two facilities were not wrongfully seized. (RR p. 36-37).

In summary of the overarching objection to the Magistrate Judge's conclusion that the Court has no subject matter jurisdiction because it cannot consider motivation, the very language of Sections 332(c)(7)(B)(iv) and (v) require the Court to consider the Town's motivation--at least as inasmuch as that motivation was related to the environmental effects of radio frequency emissions--when it revoked the Highway Permits, seized two equipment facilities in the Town, and refused to act on the two remaining applications. Under the Communications Act, a town

cannot base a decision to regulate a wireless facility on the environmental effects of that facility's radio frequency emissions, not even if that decision was based only *in part* on the effects of those emissions. *T-Mobile Northeast LLC v. Town of Ramapo,* 701 F. Supp. 2d 446, 460 (S.D.N.Y. 2009) (citing *Freeman v. Burlington Broadcasters, Inc.,* 204 F.3d 211, 325 (2d Cir. 2000) and *Oyster Bay,* 166 F.3d at 494 n. 3). The evidence that the Magistrate Judge ignored or disregarded shows that the Town's actions were based on the residents' fear of radio frequency emissions.

**III. THE MAGISTRATE JUDGE ERRED WHEN SHE RECOMMENDED THAT THE COURT DENY CROWN CASTLE SUMMARY JUDGMENT ON ITS 47 U.S.C. § 253(a) CLAIM BECAUSE CROWN CASTLE DID NOT ALLEGE THAT THE TOWN WAS ENFORCING AN UNCONSTITUTIONAL ORDINANCE.**

The Magistrate Judge disregarded the case law and FCC rulings discussed in Crown Castle's motion papers and thus, misunderstood the grounds for a claim that a municipality violated Section 253(a) of the Communications Act. The Magistrate Judge wrote:

> Plaintiff has failed to demonstrate that a case or controversy exists because Plaintiff has failed to demonstrate that the Town is seeking to enforce an unconstitutional ordinance, let alone any ordinance. Plaintiff has not demonstrated that the Town banned the deployment of wireless communication structures. Therefore, no case or controversy exists and this Court lacks jurisdiction.

(RR p. 29). Section 253(a) provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." The first part of the Magistrate Judge's error is that she does not recognize that a "legal requirement" can be an action by the local government; it does not have to be an "unconstitutional ordinance" or even an ordinance at all. (*Compare* RR p. 29 *with* DE 89-1 p. 9). The second part of the Magistrate Judge's error is that she finds that a *de facto* moratorium did not exist because the Town claimed that it issued 13 building permits for wireless infrastructure. (*Compare* RR p. 29 *with* DE 89-1 pp. 8-9).

11

a. **Town *actions* can be "Legal requirements" that violate Section 253(a).**

The FCC interprets the term "legal requirement" under Section 253(a) broadly because this "best fulfills Congress' desire to ensure that states and localities do not thwart the development of competition. … A more restrictive interpretation of the term 'other legal requirements' easily could permit state and local restrictions on competition to escape preemption based solely on the way in which action was structured." *State of Minnesota,* 14 F.C.C.R. 21706, 21707 ¶ 18 (1999). Indeed, in the *Minnesota* case, the FCC "look[ed] at the effect of the state or local government's *action* to determine whether section 253 is applicable." *Id*. ¶ 19 (emphasis added). The FCC ruled against the state because it did not provide similar access for all telecommunications providers to its right-of-way. At the heart of the dispute was an agreement between the state and a private party. The state argued that the agreement was not a "statute, regulation, or legal requirement." Although the FCC agreed that the agreement was not a statute or regulation, it created a legal requirement by excluding access to those who were not a party to the agreement. *Id.* at 21706-07 ¶¶ 16-17.

The FCC held the same interpretation of a legal requirement under Section 253(a) in the *Sandwich Isles Order* 18 years later. 32 F.C.C.R. 5878, 5884 ¶ 16 (2017). The FCC looked to the effect of an exclusive license agreement to see if it prohibited other wireless infrastructure providers from installing facilities in the public right-of-way, and the FCC found that it did violate Section 253(a). *Id.*

Because Section 253(a) requires that the Court look to the effect of the state or local government's action, the Court should not find that there is no case or controversy simply because the offending action was not an ordinance. As described and explained in detail in Plaintiff's Memorandum of Law, the FCC has interpreted the term "legal requirement" under Section 253(a) to include both express and *de facto* moratoria, (DE 89-1 pp. 8-9), and the Town's actions equaled

12

a *de facto* moratorium. (DE 89-1 pp. 9-10).

### b. The Zike Declaration does not belie Crown Castle's position that the Town's actions were a *de facto* moratorium.

On page 29 of the Report and Recommendation, the Magistrate Judge finds that because the Zike Declaration states the Town issued 13 building permits for wireless infrastructure, there was no *de facto* moratorium. Crown Castle respectfully refers the Court to the discussion of the Zike Declaration and the 13 permits above on pages __ under Point II. As discussed, whether the 13 building permits were issued for infrastructure to be installed on private property (such as antennas on top of commercial buildings) remains to be determined, and does not belie Crown Castle's position that the Town banned Crown Castle's wireless infrastructure in the Town's right-of-way.

## IV. THE MAGISTRATE ERRED WHEN SHE FOUND THAT "NOTHING IN THE RECORD INDICATES THAT CROWN CASTLE WAS GIVEN SIMILAR GUIDANCE WITH RESPECT TO THE INSTALLATION OF ITS OWN UTILITY POLES IN THE TOWN RIGHT OF WAY."

The Magistrate Judge was mistaken when she made the following finding with respect to the installation of its own utility poles in the Town's right-of-way:

> Moreover, although the record reflects that Plaintiff was told by Town employees that permits were not required to attach DAS nodes to existing utility poles, nothing in the record indicates that Plaintiff was given similar guidance with respect to the installation of its own utility poles in the Town right of way.

(RR p. 18). However, in paragraphs 2 and 3 of Crown Castle's Rule 56.1 Statement of Material Facts, Crown Castle stated that the Town's Highway Department official, Kevin Hanafan, met with Crown Castle (NextG at the time) representatives regarding the installation of a new utility pole and Mr. Hanafan issued a Highway permit for the installation. (DE 89-2 ¶¶ 2-3). To support these paragraphs, Crown Castle cited to Exhibit 2 to the Gaudioso Declaration dated January 25,

2019 (DE 89-11). Exhibit 2 is a letter from NextG's attorney to the Town's Deputy Attorney in 2009, confirming that Mr. Hanafan had issued the permit for the new pole. (*Id.*). It was there that Crown Castle first received guidance that it would only need permits from the Highway Department for new utility poles.

Moreover, the record demonstrates that the Town in fact issued 22 Highway Permits to Crown Castle for the installation of new utility poles in April 2017 after Crown's extensive filings[3], the parties' meetings, revisions, site visits, and discussions. This action was a continuance of the guidance Crown Castle had received from Mr. Hanafan. (DE 89-2 ¶¶ 12-47).

In addition, the Town's 30(b)(6) witness testified that the sole process prior to 2017 was for the Highway Department to issue permits to Crown Castles for the installation of new utility poles. (DE 89-9 52:2—52:20).

Contrary to the Magistrate Judge's finding, Crown Castle provided documents and testimony in the record that show the guidance it received from the Town concerning the process for new utility poles.

## V.   THE MAGISTRATE JUDGE ERRED WHEN SHE CONCLUDED THAT THERE IS NO DISPUTE OVER THE SIZE OF THE ANTENNAS, WHICH DETERMINES WHETHER BUILDING PERMITS WERE NEEDED.

The Town's zoning code requires an applicant to get a building permit when the "external *antennas*" are more than 10 feet in height. (DE 82-13 § 246-5.5-4 (emphasis in original)). The code makes no mention of equipment that the antennas may be attached to, let alone wooden utility poles. Crown Castle argued that the size of the antennas were under 10 feet in height, whereas the Magistrate Judge included the 35 foot utility pole in the size of the antennas. (RR p. 20). Thus, at

---

[3] These filings included detailed plans showing the specifications and details for the utility poles and the telecommunications equipment. (DE 89-2 ¶¶ 20, 27, 36).

a minimum, the parties have a genuine issue of material dispute because a building permits would not be required from Crown Castle if the code, as Crown Castle interprets it, is referring to only antennas.

## VI. THE MAGISTRATE JUDGE INCORRECTLY FOUND THAT PLAINTIFF NEEDED SPECIAL PERMITS TO INSTALL THE FACILITIES IN THE TOWN RIGHT-OF-WAY.

Chapter 246-5.5-9.2 provides the following:

> Town-owned lands. Wherever possible, communication and cellular telephone facilities shall be located on Town-owned lands. In such instances, only Town Board approval of the lease for such purposes shall be required, irrespective of the zoning district in which the property is located.

(DE 82-13 § 246-5.5-9.2). The Town has argued that the public right-of-way is Town-owned land. (*See* DE 84 p. 7 ("no person shall enter or go upon any land owned by the town… .")). Thus, the Town code did not require Crown Castle to obtain Special Use Permits and the Magistrate Judge erred when she found that Crown Castle needed special permits to install its facilities in the right-of-way.

Chapter 246-5.5-9.2 states that the Town Board is to approve a lease. Crown Castle made multiple offers to the Town over the years for a right-of-use agreement. (DE 89-2 ¶¶ 1-10). The Town always declined and instead allowed Crown Castle to obtain Highway Permits for its approved installations. (*Id.*; DE 89-2 ¶¶ 44-45, 47).

15

**VII. THE MAGISTRATE JUDGE ERRED WHEN SHE HELD THAT THERE WAS NO SUBJECT MATTER JURISDICTION BECAUSE THERE WAS NO FINAL ACTION WHEN CROWN CASTLE DID NOT APPLY FOR BUILDING PERMITS OR SPECIAL USE PERMITS.**

The Magistrate Judge erred when she concluded that the Town committed no "final action or failure to Act." (RR p.23).

### a. The revocation of the Highway Permits was a final action.

The Town has argued that Crown Castle needed three types of permits to install its facilities in the Town's right-of-way, building permits, special use permits, and Highway Permits. And yet, the Town revoked the 22 Highway Permits. If the Town's motivation for the cease and desist letter was simply to stop Crown Castle from proceeding with its work in the right-of-way rather than to ban Crown Castle from the right-of-way, the Town never had to revoke the Highway Permits. It simply could have issued the cease and desist order and required Crown Castle to apply for building and special use permits but left the Highway Permits in place. Instead, the Town revoked the Highway Permits.

As acknowledged by the Magistrate Judge, the Town failed to conduct a hearing on the revocation (RR p. 36). There is no administrative appeal process other than litigation to appeal the revocation. The revocation was a final action that is ripe for review because the Town's motivation gives the Court jurisdiction under the Communications Act. 47 U.S.C. § 332(c)(7)(B)(iv) and (v); *supra* Point II.

In addition, it is important for the Court to consider the fact that the Magistrate Judge found the Town Attorney's letter authorizing Crown Castle (NextG) to install equipment on utility poles without permits as lacking proper Town authority, (*see* RR p. 19), when the Magistrate Judge also found that the cease and desist letter from the Town Attorney authorized the Town to seize Crown Castle's facilities. (RR p. 36).

16

**b. The Town's inaction on the two remaining applications was also a final act of effective denial because under federal law the Shot-Clock did apply, contrary to the Magistrate Judge's holding.**

The Magistrate Judge wrote:

> Plaintiff's [sic] also argue that there is a shot clock violation (Count I). However, for purposes of an evaluation of this Court's jurisdiction the relevant inquiry is whether the Building Permits and Special Use Permits were required. Since the undisputed evidence is that Plaintiff never applied for the Building Permit or Special Use Permit the shot clock has not even begun to run.

(RR p. 23). The Magistrate Judge erred in her analysis.

It is indisputable that Highway Permits were required for Crown Castle to install its facilities in the right-of-way. Regardless of whether the building or special use permits were required, Crown Castle would still need the Highway Permits, and the Town never acted on these applications. (DE 89-2 ¶¶ 50-57). This is exactly the scenario that the Communications Act and the Shot-Clock regulations protect against. (DE 89-1 pp. 18-21). The Town was required to act on the two remaining Highway permit applications under federal law and its failure to act was an effective denial of the applications, (*id.* pp. 21-22), which is a final action ripe for adjudication. (*See Id.* p. 20-21).

## VIII. THE MAGISTRATE JUDGE INCORRECTLY FOUND THAT CROWN CASTLE DID NOT HAVE A VERY STRONG LIKLIHOOD OF OBTAINING THE HIGHWAY PERMITS AND THUS, CROWN CASTLE HAD NO PROPERTY INTEREST IN THE 22 HIGHWAY PERMITS IT LEGALLY RECEIVED.

The Magistrate Judge incorrectly found that Crown Castle could not meet the *Yale Auto Parts* test where "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." (RR pp. 32-33). Crown Castle had a very strong likelihood of obtaining the Highway Permits. The Highway permit-related code, Chapter 205-21 states:

> [T]he Commissioner of Highways *shall* issue a permit under this article where he finds:
>
> **A.** That the work shall be done in accordance with the standard specifications and requirements of the Town of Oyster Bay for public work of like nature.
>
> **B.** That the operation will not unreasonably interfere with vehicular or pedestrian traffic, the demand and necessity for parking spaces, and the means of ingress to and egress from the property affected and adjacent properties.
>
> **C**. That the health, welfare and safety of the public will not be unreasonably impaired.

(Emphasis added).

Obviously, the Town found that Crown Castle's 22 applications for the Highway Permits met this criteria because after eight months of discussions, negotiations, meetings, site-visits, and several filings of supporting documentation, such as plans, drawings, and reports, the Town did indeed *issue* the 22 Highway Permits. (DE 89-2 ¶¶ 12-47).

But more importantly, because the code states that the Highway Commissioner ***shall*** issue the permit if the applicant submits a proper application, "the discretion of the issuing agency was so narrowly circumscribed that *approval of a proper application* was virtually assured." *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 132 (2d Cir. 1998) (emphasis added) (citing to *RRI Realty Corp. v. Inc. Vill. of Southampton,* 870 F.2d 911, 918 (2d Cir. 1989)).

Additionally, FN 11 (p. 33) Magistrate Judge claims that the *Town of Orangetown v. Magee* case is distinguishable from Crown Castle's case because counter-claimant Magee was a landowner. (RR p. 33 n. 11). The Magistrate Judge offers no additional case law or statutory support for the position that the permit-holder must be a landowner to be entitled to permits, except that the *Magee* Court refers to Magee as the "landowner" because that happens to be his status. (*Id.*).

18

IX.  **THE MAGISTRATE JUDGE INCORRECTLY FOUND THAT CROWN CASTLE HAD NOTICE TO REMOVE ITS EQUIPMENT IN THE TOWN FROM THE CEASE AND DESIST LETTER AND THEREFORE, THERE WAS NO UNLAWFUL SEIZURE OF CROWN CASTLE'S TWO FACILITIES.**

Although the Magistrate Judge concedes that the Town did not conduct a formal hearing to either revoke the Highway Permits or remove some of Crown Castle's facilities, (RR p. 36), the Magistrate Judge mistakenly finds that the Town gave Crown Castle notice that it would remove and seize two of its installed facilities when it issued the cease and desist order on May 10, 2017. (*Id.*). The cease and desist order simply states, "[y]ou are hereby requested to cease and desist from any further work in connection with the installation of cell repeaters and poles with respect to any Town of Oyster Bay right of way permits." (DE 89-52). The letter instructed Crown Castle to stop work, which it did. The letter does not request Crown Castle to remove prior installations.

Crown Castle filed its Complaint in this action on June 8, 2017, (DE 1), and served the Town with the Summons and Complaint on June 13, 2017. (DE 7-11). The Town was well aware that Crown Castle was challenging the Town's cease and desist order and revocation of the Highway Permits before the Public Works and Highway Commissioner directed his staff to remove two of Crown Castle's facilities due to the residents' health concerns about radio frequency emissions on June 23, 2017.

If the Town believed that it had acted properly when it revoked the Highway Permits and failed to act on the two remaining Highway permit applications, it could have exercised its rights under Fed. R. Civ. P. 65 and sought preliminary injunctive relief. Instead, it acted illegally, seizing two facilities based on two very vocal residents' radio frequency concerns. (DE 89-1 pp. 9, 24-24). The Magistrate Judge erred when she found that Crown Castle had proper notice that the two facilities would be removed.

**X.   THE MAGISTRATE JUDGE ERRED WHEN SHE GRANTED ALL OF DEFENDANTS' COUNTERCLAIMS FOR ALL OF THE REASONS STATED ABOVE AND BECAUSE THE MAGISTRATE FOUND THAT THE COURT HAD NO SUPPLEMENTAL JURISDICTION TO REVIEW STATE CLAIMS.**

On page 2 of the Report and Recommendation, the Magistrate Judge recommends the following:

> … Plaintiff's claims pursuant to the Telecommunications Act be dismissed for a lack of jurisdiction, Plaintiff's motion for summary judgment with respect to the remaining claims be denied, Defendants' motion for summary judgment with respect to the remaining claims be granted and Plaintiff's motion to strike be denied as moot.

However, on page 41 of the Report and Recommendation, the Magistrate Judge recommends that the Court decline to exercise supplemental jurisdiction over Crown Castle's state law claims, "as well as Defendants' counterclaims and that such claims be dismissed without prejudice." The recommendation on page 2 is in conflict with the recommendation on page 41. To the extent that the Magistrate Judge recommends that the Town's motion for summary judgment be granted concerning the Town's Counterclaim V, Crown Castle objects as this would be an error.

Nowhere in the Town's summary judgment papers does the Town provide support under state law, federal law, or Town code for why it is entitled to be compensated for the purported "illegal use" of the right-of-way. Although the Town's Counterclaim V alleges it should be compensated $2,500 per facility in the right-of-way, the Town never provides justification for this amount as required under state law. *See MetroPCS N.Y., LLC v. City of Mount Vernon,* 739 F. Supp. 2d 409, 425 (S.D.N.Y. 2010) ("[F]ees charged ... [should] be reasonably necessary to the accomplishment of the statutory command," and the fees "should be assessed or estimated on the

basis of reliable factual studies or statistics."); *Jewish Reconstructionist Synagogue of No. Shore, Inc. v. Inc. Vill. of Roslyn Harbor*, 40 N.Y.2d 158, 163 (1976) (same).

In addition, Crown Castle offered the Town to enter into a right-of-use-agreement multiple times, which would have provided the Town compensation for the use of the right-of-way, but the Town never accepted Crown Castle's offers. (DE 89-2 ¶¶ 1-10).

## <u>CONCLUSION</u>

For all the reasons stated above, Crown Castle respectfully requests that the District Court review Magistrate Judge Lindsay's Report and Recommendation, applying a *de novo* review standard.

Dated: March 6, 2020

Respectfully submitted,

SNYDER & SNYDER, LLP

By: /s/ Robert D. Gaudioso
    Robert D. Gaudioso
    Carlotta Cassidy
    94 White Plains Rd.
    Tarrytown, NY 10591
    (914) 333-0700
    rgaudioso@snyderlaw.net
    ccassidy@snyderlaw.net

21