UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CROWN CASTLE NG EAST LLC,

                    Plaintiff,

   -against-

THE TOWN OF OYSTER BAY, THE TOWN OF
OYSTER BAY TOWN BOARD, RICHARD LENZ
in his official capacity as Commissioner of the Town
of Oyster Bay Highway Department and Department
of Public works, and JOHN BISHOP in his official
capacity as Deputy Commissioner of the Town of
Oyster Bay Highway Department,

                    Defendants.
_____

17-CV-3445 (SJF)(ARL)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
OJBECTIONS TO MAGISTRATE JUDGE LINDSAY'S
REPORT AND RECOMMENDATION**

BERKMAN, HENOCH, PETERSON, PEDDY &
FENCHEL, P.C.
Joseph E. Macy
Donna A. Napolitano
100 Garden City Plaza
Garden City, New York 11530
(516) 222-6200

Dated: March 19, 2020

**TABLE OF CONTENTS**

                                                                                              **Page**

INTRODUCTION .................................................................. 1

ARGUMENT ..................................................................... 2

I.      Legal Standard ............................................................. 2

II.     Magistrate Lindsay Correctly Determined that the Court
       Lacked Jurisdiction Over Plaintiff's Telecommunications Act Claims ............... 2

       A.      There was No "Final Action" or "Failure to Act" by the Town ............... 2

       B.      Motivation is Irrelevant Under 47 U.S.C. § 332(c)(7)(B) .................... 4

       C.      Evidence in Record Shows that the Town did not Discriminate
               by Selectively Requiring Plaintiff to Obtain Permits ....................... 5

III.    Section 253(a) is Inapplicable Because Plaintiff Failed to
       Allege that the Town was Enforcing an Unconstitutional Ordinance ............... 7

IV.    Magistrate Judge did not Err When She Determined that Plaintiff
       Provided no Support for its Claim that no Other Utilities are Required
       to Obtain a Permit for Installation in the Public Right-of-Way ..................... 9

V.     Any Suggested Error Relating to the Guidance Plaintiff Received with
       Respect to the Installation of its Own Utility Poles is Immaterial .................. 10

VI.    Magistrate Judge did not Err when She Concluded that Plaintiff was
       Required to Obtain Building Permits and Special Use Permits .................... 11

VII.   Magistrate Judge Correctly Determined that Plaintiff
       Had no Property Interest in Highway Permits ................................. 12

VIII.  Magistrate Judge Correctly Determined that the Town Lawfully
       Removed Two of the Installed Telecommunication Facilities .................... 13

IX.    Magistrate Judge Correctly Declined to
       Exercise Supplemental Jurisdiction .......................................... 14

CONCLUSION .................................................................. 15

# TABLE OF AUTHORITIES

**Cites**                                                                                                    **Pages**

*Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*,
2013 WL 3357169 (S.D.N.Y. July 3, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Crown Castle NG E. LLC v. City of Rye*,
2017 WL 6311693 (S.D.N.Y. Dec. 8, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc.*,
777 F. Supp. 228 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Homere v. Inc. Vill. of Hempstead*,
2019 WL 1403117 (E.D.N.Y. Mar. 28, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Martinez v. Loughren*,
2018 WL 1532435 (E.D.N.Y. Mar. 29, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*New York SMSA Ltd. P'ship v. Town of Riverhead*,
45 F. App'x 24 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sprint Spectrum L.P. v. Bd. of Zoning Appeals of Town of Brookhaven*,
244 F. Supp. 2d 108 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Upstate Cellular Network v. City of Auburn*,
257 F. Supp. 3d 309 (N.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Up State Tower Co., LLC v. Town of Kiantone, New York*,
2016 WL 7178321 (W.D.N.Y. Dec. 9, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Walker v. Hood*,
679 F. Supp. 372 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATUTES**:

47 U.S.C. § 253(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

47 U.S.C. § 253(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

47 U.S.C. § 332(c)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

47 U.S.C. § 332(c)(7)(B)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 72(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# INTRODUCTION

This Court should adopt the Report and Recommendation [DE101] of Magistrate Judge Arlene R. Lindsay, grant Defendants'[1] motion for summary judgment and deny Plaintiff's motion for summary judgment ("R&R"). The R&R correctly concluded that, among other things, Crown Castle NG East LLC ("Plaintiff" or "Crown Castle") failed to demonstrate this Court's jurisdiction over Plaintiff's Telecommunications Act claims.

Despite Magistrate Lindsay's comprehensive review of the evidentiary record and analysis of the relevant case law, Plaintiff contends that she erred when concluding that this Court lacked jurisdiction. However, a review of "Plaintiff's Objection to Magistrate Judge Lindsay's Report and Recommendation" ("Objection") shows that that Plaintiff either misapprehends or refuses to accept a local government's ability to control and manage the construction of wireless communication facilities in its right-of-way.

As set forth in detail in her R&R, Magistrate Lindsay properly concluded that a claim under Section 332 of the Telecommunications Act only arises upon the denial of a building permit application, which Plaintiff undeniably failed to submit. Further, Magistrate Lindsay correctly determined that a claim under Section 253 arises only when the constitutionality of a local law or ordinance is challenged. Plaintiff failed to demonstrate the Town of Oyster Bay ("TOOB") was seeking to enforce any ordinance, let alone an alleged unconstitutional one. Thus, because Plaintiff never submitted the required permit applications, it cannot challenge Defendants' denial or the local law that requires an application's submission. Allowing Plaintiff to advance its claims despite its failure to submit the required permit applications as required by TOOB's local laws would place the proverbial cart before the horse.

---

[1] Unless otherwise defined, capitalized terms shall have the same meanings given to them in the R&R.

1

# ARGUMENT

I. **Legal Standard**

A district court judge may "accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations." *Walker v. Hood*, 679 F. Supp. 372, 374 (S.D.N.Y. 1988). "As to those portions of a report to which no 'specific written objections' are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous." *Homere v. Inc. Vill. of Hempstead*, 2019 WL 1403117, *1 (E.D.N.Y. Mar. 28, 2019) (Bianco, U.S.D.J.)[2] (citing Fed. R. Civ. P. 72(b)(3)). "When 'a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review.'" *Martinez v. Loughren*, 2018 WL 1532435, *1 (E.D.N.Y. Mar. 29, 2018) (Bianco, U.S.D.J.) (citations omitted).

Following its review of the full record and the applicable law, this Court should fully adopt the analysis and recommendations contained in the R&R in their entirety.

II. **Magistrate Lindsay Correctly Determined that The Court Lacked Jurisdiction Over Plaintiff's Telecommunications Act Claims**

A. **There was No "Final Action or "Failure to Act" by the Town**

Magistrate Lindsay correctly concluded that the Court lacked jurisdiction over Crown Castle's Section 332(c)(7)(B) claims because no building permit applications were submitted, let alone denied. *See,* R&R at 23. Crown Castle overlooks and/or ignores this crucial fact and its critical omission.

---

[2] On the dates the referenced decisions were issued, Judge Joseph F. Bianco was a sitting District Court Judge in the Eastern District of New York. Judge Bianco was appointed as a United States Circuit Judge for the Second Circuit on May 13, 2019 and sworn in as a Judge of the Second Circuit in September 2019.

"Congress and courts recognize local governments' legitimate interest in determining the placement of wireless facilities." *See,* R&R at 17, citing *Sprint Spectrum L.P. v. Bd. of Zoning Appeals of Town of Brookhaven,* 244 F. Supp. 2d 108, 114 (E.D.N.Y. 2003)). As such, the "'siting of wireless facilities' is 'committed' to the 'discretion of state and local governments, subject only to the limitations set forth in Section 332(c)(7)(B).'" *See,* R&R at 17. Section 332(c)(7)(B)(v) permits a plaintiff to seek review of state and local zoning decisions in federal court and provides:

> (v) Any person adversely affected by **any final action or failure to act** by State of local government . . . that is inconsistent with this subparagraph may, within 30 days after such action for failure to act, commence an action in any court of competent jurisdiction.

47 U.S.C. §332(c)(7)(B)(v). Emphasis added. The limitations imposed by the Section 332(c)(7)(B) however, are only triggered when a local government denies an application for a building permit. *See,* R&R at 23-24. "Jurisdiction for the federal courts to hear a claim under Section 332 only arising upon the denial of an application for a permit." *Id.* at 23. "A number of courts, including several courts in this Circuit, have ruled that when the wireless service provider's application has not been denied," a claim under Section 332(c)(7)(B) is not ripe for review. *Up State Tower Co., LLC v. Town of Kiantone, New York,* No., 2016 WL 7178321, *6 (W.D.N.Y. Dec. 9, 2016) (citing cases). *See,* R&R at 24.

Magistrate Lindsay observed that "Plaintiff applied for 22 Road Opening Permits but never applied for a Building Permit or a Special Use Permit." *Id.* at 23. Crown Castle fails to dispute or challenge this specific finding. In fact, Case Castle failed to obtain a Building Permit or a Special Use Permit for any of the over 100 DAS facilities it has installed in the Town. *Id.* at 7. Because she also determined that these permits "were required and not applied for,"

3

Magistrate Lindsay properly concluded there was not, nor could there have been a final action or failure to act under Section 332. *Id.* at 23-24.

For this same reason, Plaintiff is wrong when it argues that Magistrate Lindsay erred when she determined that the Town's revocation of the Highway Permits and its failure to act in relation to Plaintiff's two (2) outstanding Highway Permits each constituted a "final action" under Section 332(c)(7)(B). Despite its insistence to the contrary, there can be no "failure to act" or "final action" by a municipality until there is a denial of or failure to act upon an application. *See Upstate Cellular Network v. City of Auburn*, 257 F. Supp. 3d 309, 313 (N.D.N.Y. 2017) (citing the 2009 and 2014 FCC Orders); *New York SMSA Ltd. P'ship v. Town of Riverhead*, 45 F. App'x 24, 27 (2d Cir. 2002) ("Verizon's second and third causes of action are properly dismissed for the simple reason that the Town has not issued a final (and therefore appealable) decision on Verizon's application.")

**B.      Motivation is Irrelevant Under 47 U.S.C. § 332(c)(7)(B)**

Though the undisputed evidence shows that Plaintiff never applied for the required Building Permits or Special Use Permits, it nonetheless argues that Magistrate Lindsay erred by not considering the Town's purported motivation for its actions and/or failures to act, *i.e.,* the Town's "fear of radio frequency emissions" as reflected in the testimony of Gregory Carman, the Deputy Supervisor for the Town (*see* Objection at 10) and Town Supervisor's public statements. *See* R&R at 3-4; *see also* 332(c)(7)(B)(iv) ("No . . . local government . . , may regulate . . . on the basis . . . of radio frequency emissions . . .") Plaintiff complaints consists of the revocation of the Highway Permits, the seizure of the two utility poles and the Town's failure to act on Plaintiff's two (2) remaining applications actions. *See* Objection at 10. Crown Castle's

argument should similarly be rejected due to its undeniable failure to submit the required permits.

While the Town acknowledges that there was generalized community opposition to the installation of the DAS Nodes and that it cannot restrict the placement of wireless facilities based on frequency emissions, such concerns were irrelevant and immaterial to Magistrate Lindsay's analysis under Section 332(c)(7)(B). Because the required applications were never submitted, it is impossible and illogical for Plaintiff to now argue that the public's perceived health concerns played a role in the Town's denial of Plaintiff's applications. *Id.* at 4. As noted earlier, any argument to the contrary would place the proverbial cart before the horse.

Ultimately, because no applications were filed and because no final decision was made in relation to any applications, the R&R correctly concluded that Crown Castle failed to demonstrate to the Court that jurisdiction exists. Accordingly, Magistrate Lindsay properly recommended that this Court dismiss Plaintiff's claims brought pursuant to Section 332(c)(7)(B) of the Telecommunications Act. *See,* R&R at 24.[3]

C. **Evidence in Record Shows that the Town did not Discriminate by Selectively Requiring Plaintiff to Obtain Permits**

Under Section 253(c) of the Telecommunications Act, a local government is permitted to manage its public rights-of-way by requiring "[f]air and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of the public rights-of-way . . . ." (47 U.S.C. § 253(c)). Crown Castle argues that Magistrate Lindsay erred by, among other things, disregarding "the timing of" the Town's cease and desist letter and the "removal of some of Crown Castle's equipment." *See,* Objection at 5-6. Plaintiff contends that the timing of these events illustrates the Town's alleged selective and

---

[3] The Amended Complaint's First, Second, Third and Fifth Claims for Relief were brought pursuant to Section 332(c)(7)(B) of the Telecommunications Act.

5

discriminatory management of its rights-of-way. *Id.* Plaintiff's argument however, similar to its first, fails to acknowledge and/or account for its failure to submit the required Building Permit and Special Use Permit applications. As explained by Magistrate Lindsay, any claim that the Town selectively enforced its Code provisions is belied by the evidence contained in the record.

First, the evidence before Magistrate Lindsay showed that the Town "has received 21 applications for building permits and has issued building permits for 13 wireless communications structures . . ." *See,* R&R at 29. This evidence refutes Plaintiff's claim of selective enforcement and/or any allegation that the Town issued a moratorium on the deployment of telecommunications facilities. Plaintiff offered no support for its claim that "no other utility is required to obtain a permit . . . ." *Id.* at 20.

Plaintiff contends however, that Magistrate Lindsay nonetheless erred by focusing solely on the Town's issuance of the 13 building permits and ignoring whether these permits were issued for structures in the Town's right-of-way or on private property. "[T]he key unanswered question is whether these permits were issued for construction on private property or within the Town's right-of-way. Without knowing this information, a genuine issue of material fact remains." *See,* Objection at 8, 13. "[W]hether the 13 building permits were issued for infrastructure to be installed on private property . . . remains to be determined, and does not belie Crown Castle's Position that the Town banned Crown Castle's wireless infrastructure in the Town's right-of-way." Crown Castle argues that if the permits were issued for construction on private property, it would tend to show that the "Town discriminated against Crown Castle in violation of Sections 253 and 332 of the Communications Act." *See,* Objection at 7. This argument is one of several red herrings advanced by Crown Castle in its Objection.

As noted by Magistrate Lindsay and numerous times previously herein, a claim under Section 332 only arises "upon the denial of an application for a permit" (R&R at 23) and a claim under Section 253 is only implicated when a municipality "is seeking to enforce an unconstitutional ordinance . . . ." *See,* R&R at 29. Here, "the undisputed evidence is that Plaintiff never applied for the Building Permit or Special use Permit . . ." (*Id.* at 23) and failed to "point to a regulation or Town Code provision that is violative of Section 253." *Id.* at 28. Thus, whether the 13 building permits were issued for construction in the public right-of-way or on private property is irrelevant. As such, Plaintiff has not demonstrated a material issue of fact and its objection should be overruled.

### III. Section 253(a) is Inapplicable Because Plaintiff Failed to Allege that the Town was Enforcing an Unconstitutional Ordinance

Section 253(a) of the Telecommunications Act states that "[n]o . . . local statute or regulations, or other state of local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." (47 U.S.C. § 253(a)). Plaintiff disagrees with Magistrate Lindsay's reasoned analysis and ultimate determination that Plaintiff's claim under Section 253 is inapplicable since Plaintiff fails to challenge any Town ordinance or local law. *See,* Objection at 11; *see also,* R&R at 26-29.

Plaintiff argues that the "FCC has 'interpreted the term 'legal requirement' under Section 253(a) to include both express and *de facto* moratoria . . . and the Town's actions equaled a *de facto* moratorium." *See,* Objection at 12-13. Plaintiff however, provides no case law to support both its and the FCC's interpretation of the term "legal requirement." Additionally, Plaintiff's argument ignores the numerous cases relied upon by Magistrate Lindsay, including several prior federal court decisions involving Plaintiff or a related entity, that require a plaintiff to challenge a specific local law prior to invoking Section 253(a).

7

As noted by Magistrate Lindsay,

> A claim brought pursuant to Section 253, however, is not based on a decision regarding zoning, but rather on a local regulation and is typically used to challenge a "franchising requirement or other potentially discriminatory licensing scheme."
>
> \* \* \* \* \* \*
>
> Plaintiff has failed to point to a regulation or Town Code Provision that is violative of Section 253. Plaintiff does not challenge any Town ordnance, but rather only challenges the actions by the Town in issuing its cease and desist letter . . . directing Crown Castle to cease construction and operation of 22 separate DAS facilities . . . "Section 253 is a preemption statute that at its heart deals with the law themselves, not discretionary decisions made pursuant to those law."

*See,* R&R at 25, 28. In support of her conclusion, Magistrate Lindsay cited to *Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*, 2013 WL 3357169, \*1 (S.D.N.Y. July 3, 2013) and *Crown Castle NG E. LLC v. City of Rye*, 2017 WL 6311693, \*5 (S.D.N.Y. Dec. 8, 2017) ("Plaintiff also does not allege any other statute, ordinance, or regulation imposed by the City that could otherwise bring the matter under the purview of Section 253 of the TCA.") Crown Castle makes no attempt to distinguish these cases or otherwise explain why they are "bad law."

Based on the foregoing, Magistrate Lindsay correctly determined that because Plaintiff failed to demonstrate that the Town is seeking to enforce an alleged unconstitutional law, it has failed to state a valid claim for relief under Section 253(a). Thus, the R&R correctly recommended the dismissal of Plaintiff's claim under Section 253(a).[4]

---

[4] The Amended Complaint's Fourth Claim for Relief was brought pursuant to Section 253 of the Telecommunications Act.

IV. **The Magistrate Judge Did not Err When She Determined that Plaintiff Provided No Support for its claim that no Other Utilities <u>are required to Obtain a Permit for Installation in the Public Right-of-Way</u>**

Crown Castle contends Magistrate Lindsay erred by allegedly disregarding the testimony of the Town's Planning and Development Commissioner whom responded "not to my knowledge" when asked if the "Town ever required a building permit for a utility pole within the Town's right-of-way." *See,* Objection at 9. Plaintiff argues that this testimony clearly shows that the "Town did not require other utilities to obtain building permits to install utility poles in the Town's right-of-way." *Id.* Magistrate Lindsay directly addressed this argument and correctly concluded that "Plaintiff provides no support of this conclusory statement." *See,* R&R at 20. For example, Plaintiff submits no evidence that it is in fact a utility that is subject to direct government regulation and public control such as PSE&G. Plaintiff's own website describes itself not as a utility but rather as a "wireless provider [or] content provider. We build and maintain the infrastructure that works to bring connectivity to people, business, and communities across the country. We work closely with wireless carriers. . . . to design and build solutions that meet their unique connectivity needs . . . ." *See,* https://www.crowncastle.com/about-us.

To be clear, whether the Town required other "utilities" to obtain building permits prior to installing utility poles in the public right-of-way does not, nor can it, excuse or justify Plaintiff's failure to comply with the Town Code and submit the required Building Permits and Special Use Permits. Magistrate Lindsay specifically considered and rejected Plaintiff's flawed argument. "[T]he fact that Plaintiff [or other utilities] was permitted to violate the Town Code in the past does not provide an excuse for its current failure to apply for the necessary permits." *See,* R&R at 18.

9

**V.     Any Suggested Error Relating to the Guidance Plaintiff Received
With Respect to the Installation of its Own Utility Poles is Immaterial**

In the R&R, Magistrate Lindsay comments that,

> Moreover, although the record reflects that Plaintiff was told by Town employees that permits were not required to attach DAS Nodes to existing utility poles, nothing in the record indicates that Plaintiff was given similar guidance with respect to the installation of its own utility poles in the Town right of way.

*See,* R&R at 18.  Plaintiff contends that the aforementioned finding by Magistrate Lindsay contradicts the evidence presented since "Crown Castle provided documents and testimony that show the guidance it received from the Town concerning the process for new utility poles." *See,* Objection at 14.  Plaintiff points to its meetings and consultations with Kevin Hanafan, the Town's Highway Department Official, to support its claim. *Id.* at 13.

However, Plaintiff fails to identify the significance of this purported error and its effect on the R&R's recommendation to dismiss Plaintiff's First through Fifth Claims for Relief.  Nevertheless, assuming, without conceding, that Mr. Hanafan provided improper advice, "[t]he erroneous assurances given by the . . . Highway Department employees with respect to the Town permit requirements for attaching DAS Nodes to existing utility poles does not bind the Town. [I]t is settled New York law that a town official . . . cannot by his or her lone statement bind the municipality as a whole." *See,* R&R at 19 (citations omitted).  Magistrate Lindsay further explained,

> Here, Plaintiff does not take the position that the Town Code provisions were not on the books.  Rather, Plaintiff simply argues that no one ever pointed out that Building Permits and Special Use Permits were required.  This is a classic example of estoppel and such does not excuse Plaintiff from compliance with Town Code.

Plaintiff fails to refute or contest any of the cases referenced or relied upon by Magistrate Lindsay with respect to her conclusion that estoppel does not prevent a municipality from enforcing its local laws.

### VI. The Magistrate Judge did not Err when She Concluded that Plaintiff Was Required to Obtain Building Permits and Special Use Permits

Crown Castle contends that because there is dispute between the parties concerning the size and shape of its DAS Nodes and/or antennas, a material issue of fact exists concerning whether Building Permits were in fact required under the Town Code. *See,* Objection at 14-15. Plaintiff maintains that its antenna are under 10 feet in height and the Town Code only requires an applicant to obtain a building permit when the antenna is more than 10 feet in height. *Id.* Crown Castle however, glosses over a crucial point.

While Magistrate Lindsay appears to agree with Plaintiff that the Town Code only requires a building permit when an antenna's height exceeds 10 feet, she also notes that the antennae Plaintiff seeks to install "are placed on 35 foot utility poles," which brings the antenna within the purview of Section 246-5.5.4.2 of the Town Code. *See,* R&R at 21, "Plaintiff stated that the utility poles to be installed would be reduced from 50 feet to 35 feet."[5] Plaintiff's effort to ignore the complete structure and to only focus on the antenna itself is both illogical and unavailing. As such, Plaintiff was required to obtain Building Permits.

With respect to its claim that the R&R incorrectly concluded that Special Use Permits are required in install telecommunication facilities, Plaintiff overlooks the requirements of Section 246-9.9.1 of the Town Code. This provision mandates an applicant to obtain a Special Use Permit from the Town's Zoning Board of Appeals for any cellular phone/antenna tower. *See* Declaration of Todd Steckler, Esq. submitted in support of Defendant's Motion for Summary

---

[5] Under Section 246-5.5.5.4.2 of the Town Code, Antenna is defined as "Any system of wires, **poles**, discs or similar devises used for the transmission, reception or both of electromagnetic radiation waves." Emphasis added.

Judgment, ECF 82, Exhibits G and H. Because Plaintiff sought to install antennas and towers related to wireless communications, the Town's Code provisions related to Special Use Permits were "implicated." *See,* R&R at 21. Based on the foregoing, Magistrate Lindsay correctly determined that "Plaintiff is not excused from compliance with [the Town's Code] provisions." *Id.*

### VII. The Magistrate Judge Correctly Determined that Plaintiff Had no Property Interest in Highway Permits

At the core of this specific objection is Plaintiff's contention that the Highway Commissioner allegedly had minimal discretion with respect to his issuance of the Highway Permits, "because the code states that the Highway Commissioner ***shall*** issue the permit if the applicant submits a proper application." *See,* Objection, at 18. Based on this lack of alleged discretion on the part of the Highway Commission, Crown Castle argues that it "had a very strong likelihood that the application would have been granted" and thus, Magistrate Lindsay erred when deciding that Crown Castle "could not meet the *Yale Auto Parts* test." *Id.* at 17.

Magistrate Lindsay, in directly addressing Crown Castle's argument, determined that Plaintiff failed to "demonstrate that it was clearly entitled to the permit in question." *See,* R&R at 32.

> In the instant case, Plaintiff cannot satisfy the *Yale Auto Parts* entitled test. First, Plaintiff fails to provide any facts suggesting that if given adequate procedural safeguards, there was a "certainty of a very strong likelihood" that Plaintiff's applications would not have been revoked. The Town Code in question provides that Town consent must be obtained prior to entering the Town right of way. Plaintiff has attached numerous exhibits to its motion for summary judgment regarding negotiations for the approval of the Road Opening Permits. Pl. Mem. at 4. Clearly, Plaintiff is aware that the granting of the Road Opening

> Permit *was far from a certainty* and therefore Plaintiff is not entitled to the permit and no property rights vest. In light of the fact that the "Court considers the property right issue as a threshold matter, a civil rights due process claims [sic] may be rejected without the necessity of exploring whether the local authority has acted in an arbitrary manner."

Because Magistrate Lindsay determined that the granting of the road opening permit applications was not "virtually assured, and as a result, the "strong likelihood" aspect of the *Yale Auto Parts* test was not satisfied, Plaintiff's objection should be overruled.

### VIII. The Magistrate Judge Correctly Determined that the Town Lawfully Removed Two the Installed Telecommunication Facilities

Crown Castle argues that the Town did not provide it with proper notice that it intended to revoke the previously issued Highway Permits and remove Crown Castle's two (2) recently installed cellular towers. Thus, Crown Castle contends that the Town's removal of the two (2) towers were unlawful. *See,* Objection at 19. While Magistrate Lindsay ultimately concluded no formal hearing was held with respect to the revocation of the Road Opening Permits, Plaintiff undoubtedly had notice that their inaction would result in the removal of the facilities that were installed without the proper and required permits.

Magistrate Lindsay opined,

> Plaintiff was put on notice by letter dated May 10, 2017, that its continued operation and installation of equipment on Town land had come to an end. Plaintiff was given an opportunity through this notice to remove their property. Notwithstanding this notice, Plaintiff declined to take action to secure their property . . . Plaintiff declined to take any action to secure their property."

*See,* R&R at 36-37. Magistrate Lindsay further observed, "This Court has no doubt that upon receipt of [the May 10, 2017] notice Plaintiff was advised that they had no right to continue their presence on the Town right of way and yet they failed to act. Thus, Defendant ere [sic] left with

13

no other choice but to remove Plaintiff's property." *Id.* at 36, n.13. In light of the foregoing, the Court correctly determined that "Plaintiff cannot on this record establish that its equipment was wrongfully seized." *Id.* at 37.

### IX. The Magistrate Judge Correctly Declined to Exercise Supplemental Jurisdiction

Following the Court's dismissal of the Amended Complaint's Telecommunications Act claims, there were no longer any claims remaining over which the Court had original jurisdiction. In such a situation, "[t]he Court has the discretion to dismiss plaintiffs' pendent state law claims for lack of subject matter jurisdiction when it dismisses all of the federal question claims in a complaint." *Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc.*, 777 F. Supp. 228, 240 (S.D.N.Y. 1991).

Here, Magistrate Lindsay properly exercised her discretion by concluding that the Court should decline to exercise supplemental jurisdiction over Crown Castle's state law claims. "In light of the recommended dismissal of all claims over which it has original jurisdiction, the undersigned reports and recommended that the District Court . . . decline to exercise supplemental jurisdiction over Plaintiff's state law claims for conversion, trespass, to chattel, violation of N.Y. Trans. Corp. Law Section 27 and CPLR Article 78 . . . ." *See,* R&R at 41.

## CONCLUSION

For the reasons set forth herein and in the R&R, the Town respectfully requests that this Court fully adopt the Report and Recommendation of Magistrate Judge Arlene R. Lindsay and grant Defendants' motion for summary judgment.

**BERKMAN, HENOCH, PETERSON,**
**PEDDY & FENCHEL, P.C.**

By:   /s/ Joseph E. Macy
      Joseph E. Macy
      Donna A. Napolitano
*Special Counsel for Defendants*
100 Garden City Plaza
Garden City, New York 11530
(516) 222-6200

Of Counsel: Nicholas Tuffarelli, Esq.